**George and Elizabeth LYBRAND,
Appellants,**

v.

**Robert and Leta TRASK, Appellees.**

**No. S–9510.**

Supreme Court of Alaska.

Sept. 28, 2001.

802

Ronald P. Hemby, Hemby & Keller, P.C., Ketchikan, for Appellants.

Robert C. Erwin and Roberta C. Erwin, Erwin & Erwin, LLC, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

Elizabeth Lybrand sued her neighbors, Robert and Leta Trask, for intentional infliction of emotional distress (IIED) after Leta Trask painted large words and symbols on the Trasks' roof. The trial court dismissed Lybrand's IIED claim at trial at the conclusion of her case in chief. Because the trial court did not abuse its discretion in concluding that Leta Trask's conduct was not sufficiently "outrageous" to support an IIED claim, we affirm.

## II. *FACTS AND PROCEEDINGS*

George and Elizabeth Lybrand live in Ketchikan in a hillside home adjacent to and uphill from residential rental property owned by Robert and Leta Trask. After fire damaged the Lybrands' home and Elizabeth Lybrand suffered a stroke, the Lybrands undertook construction projects to rebuild and improve their home. As a result, debris from the Lybrand property entered the Trask property. When the Trasks and Lybrands were unable to amicably resolve their resulting disputes, Leta Trask painted the

following Biblical passages and citations in large print on her roof: "DO UNTO OTH-ERS," "LUK 6:31 MAT 7:12 19:19," "LOVE THY NEIGHBOR," "BY THEIR (DEEDS) YE SHALL KNOW THEM," "MAT 7:20." These were followed by a large painted crucifix and the message, "YOURE WELCOME GEORGE L."

In April 1998 George Lybrand sought a superior court injunction ordering the Trasks to remove the lettering. In an amended complaint, Elizabeth Lybrand sought IIED damages, claiming that the lettering had been painted for vexatious and retaliatory purposes, with the intent to inflict emotional distress, and had caused Elizabeth Lybrand to suffer emotional distress and trauma requiring professional therapy. The Trasks answered and counterclaimed for compensatory and punitive damages; they alleged various tortious and unneighborly activities, including trespass, nuisance, and misrepresentation.

Superior Court Judge Michael A. Thompson heard the parties' claims at a bench trial. At the conclusion of Elizabeth Lybrand's case in chief, the Trasks' attorney moved for judgment on the IIED claim. The superior court found Elizabeth Lybrand had suffered emotional distress, but that, although Leta Trask's conduct was intentional, it was not outrageous. The superior court therefore granted the Trasks' motion for judgment on the IIED claim. Trial then proceeded on the Trasks' counterclaims. At the close of trial, the superior court found that a trespass had occurred when debris entered the Trasks' property; it awarded the Trasks nominal damages of one dollar. The court declined to award any other relief, finding that none of the remaining claims or counterclaims had been sufficiently established. The parties agreed to entry of an injunctive order prohibiting the painting of words or messages on the Trasks' roof.

The Lybrands appeal the dismissal of Elizabeth Lybrand's claim for IIED damages.

## III. DISCUSSION

### A. Standard of Review

■ Whether Elizabeth Lybrand presented sufficient evidence to support a prima facie case for intentional infliction of emotional distress is a threshold question which we review for abuse of discretion.[1]

### B. The Trial Court Did Not Abuse Its Discretion in Concluding that Leta Trask's Conduct Was Not Outrageous.

■ To establish a prima facie case of intentional infliction of emotional distress, the plaintiff must prove that the defendant " 'through extreme or outrageous conduct ... intentionally or recklessly cause[d] severe emotional distress or bodily harm to another.' "[2] The trial court must " 'make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim of intentional infliction of emotional distress.' "[3] Liability for IIED should only be found when " 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "[4]

---

1. *See Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 133 (Alaska 2000); *Hawks v. State, Dep't of Pub. Safety*, 908 P.2d 1013, 1015 (Alaska 1995); *see also Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 589 (Alaska 2001) (applying threshold determination requirement to summary judgment stage of IIED claim; reversing trial court's grant of summary judgment to IIED defendant and remanding for threshold determination of whether defendant's conduct was sufficiently outrageous and plaintiff's emotional suffering was sufficiently severe to support IIED claim).

2. *Odom*, 999 P.2d at 133 (quoting *Richardson v. Fairbanks N. Star Borough*, 705 P.2d 454, 456 (Alaska 1985)).

3. *Id.* (quoting *Richardson*, 705 P.2d at 456).

4. *Id.* (citations omitted). This court adopted its rule from the Restatement (Second) of Torts § 46 (1965). *See Richardson*, 705 P.2d at 456. Comment d of that section states:

   The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Lia-

The superior court, sitting as the trier of fact in this bench-tried case, found that the Lybrands had failed to prove that Leta Trask's conduct was extreme and outrageous. It therefore dismissed the IIED claim. The Lybrands argue that the superior court abused its discretion in making this finding. They point to the testimony of neighbors and the mayor of Ketchikan who "decried" the appearance of the Trask roof, and to George Lybrand's testimony that the appearance of the roof caused the Ketchikan–Gateway Borough Assembly, sitting as the Board of Equalization, to reduce the assessed value of the Lybrand property by $75,000. The Lybrands argue that "[t]o hold that conduct which alienates neighbors, imparts acrimonious messages to immediate neighbors, and seriously diminishes the value of nearby property, is not outrageous is contrary to common sense and precedent."

The evidence the Lybrands cite does not establish that Leta Trask's conduct was sufficiently outrageous to satisfy the requirements of an IIED claim in Alaska or that the trial court abused its of discretion by dismissing the IIED claim. The trial court considered the conduct in light of the prerequisites for making an IIED claim in Alaska and compared it to the conduct discussed in reported Alaska IIED cases. The trial court concluded that Leta Trask's conduct did not "measure[ ] up" to the outrageousness threshold required for an IIED claim. We agree.

In only two cases, *Odom v. Fairbanks Memorial Hospital* and *King v. Brooks,* have we held that a trial court abused its discretion in determining that conduct was not sufficiently outrageous to justify an IIED claim.[5] In each of those cases, the appellate record contained far more substantial evidence of outrageousness than does the record in this case. In *King,* we reversed the superior court's grant of summary judgment dismissing the plaintiff's IIED claim, where the rich evidentiary record showed that the defendant-supervisor had pursued a "two year private vendetta" against the plaintiff-employee.[6] Similarly, in *Odom,* we concluded that the plaintiff-anesthesiologist at Fairbanks Memorial Hospital had alleged facts sufficient to support an IIED claim when he alleged that his employer had retaliated against him—after he announced plans to open a clinic that would compete with the hospital—by placing him under investigation in bad faith, denying him staff privileges, and publishing in a national medical professional reporting system that his privileges had been revoked for "Incompetence/Malpractice/Negligence."[7]

Unlike the present case, the disputed conduct in those cases involved multiple, concerted efforts to seriously damage the well-being and reputation of the plaintiff.[8] The

---

bility has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

**5.** See *Odom,* 999 P.2d at 133; *King v. Brooks,* 788 P.2d 707, 711 (Alaska 1990).

**6.** See *King,* 788 P.2d at 711. The record revealed that King's supervisor had: (1) created a special performance evaluation for King; (2) assigned King extensive overtime and additional responsibilities; (3) yelled at King and called him a liar; (4) insisted that King undergo a psychological examination under intimidating circumstances; (5) delayed King's return to work after he passed the psychological evaluation; (6) kept King on light duty status contrary to departmental poli-

cies; (7) reduced King's rank and status and placed him on probationary review for six months; (8) publicly and falsely accused King of misrepresenting his rank, causing King embarrassment and humiliation; (9) altered and amended King's past work evaluations; (10) harassed King and singled him out for negative comments; (11) wrongly accused King of making a false arrest and tape recorded an interview concerning the incident; (12) concealed from King a potentially dangerous situation on campus; and (13) accused King a second time of false arrest and then sought a letter from the district attorney stating that King's involvement had been illegal. See *id.* at 708–09.

**7.** See *Odom,* 999 P.2d at 126–27, 133.

**8.** We have affirmed trial court determinations that disputed conduct satisfied the threshold of outrageousness where there was evidence of similarly sustained attacks. See, e.g., *Cameron v. Beard,* 864 P.2d 538, 540–41, 548–49 (Alaska

trial court properly concluded that the disputed conduct in this case was not sufficiently egregious to warrant the label: "Outrageous!".[9] We therefore conclude that the trial court did not abuse its discretion in dismissing Elizabeth Lybrand's IIED claim.

C. *The Alleged Violation of the Ketchikan Gateway Borough Sign Ordinance Has No Independent Bearing on Whether Leta Trask's Conduct Was Outrageous.*

The Lybrands also argue that the trial court erred by failing to determine whether Leta Trask violated the Ketchikan Gateway Borough sign ordinance.[10] They argue that this determination is crucial to deciding whether Leta Trask's conduct was outrageous. The Lybrands cite no authority to support their argument, and none is apparent in our IIED case law. Our cases do not characterize as "outrageous" conduct that violates regulatory law such as a sign ordinance, if it is not otherwise the sort of atrocious and intolerable conduct our IIED cases discuss. Any violation of the sign ordinance by Leta Trask did not make her conduct outrageous.

## IV. CONCLUSION

We AFFIRM the trial court's decision dismissing Elizabeth Lybrand's IIED claim.

---

1994) (affirming threshold finding of outrageous conduct where supervisor-defendants had retaliated against employee-plaintiff for making allegations of workplace corruption by undertaking "purposeful campaign to force him off the job"; where campaign included bad faith investigations and punishment of plaintiff); *Oaksmith v. Brusich*, 774 P.2d 191, 193–94, 200 (Alaska 1989) (affirming threshold finding of outrageousness where record contained evidence of conduct including: (1) telling plaintiff's customers that plaintiff ran his business badly; (2) putting "for sale" signs on business property to make customers believe that plaintiff was going out of business; (3) throwing temper tantrum, screaming and pulling out hair in front of customers; (4) using profanity and insulting language toward plaintiff in front of customers; and (5) using motor vehicle to charge and crash into plaintiff's car).

Of course, an isolated incident or series of uncoordinated events may also be sufficiently egregious to satisfy the outrageousness threshold. *Compare Teamsters Local 959 v. Wells*, 749 P.2d 349, 358 (Alaska 1988) (holding that threatening union member's life if he did not convince his supervisor-spouse to quit during strike was outrageous conduct as matter of law) *with Hawks*, 908 P.2d at 1015 (affirming grant of summary judgment dismissing claim that state's five-year delay in identifying remains of murder victim amounted to IIED where "State's conduct of the investigation exhibited, at most, a lack of diligence and organization that perhaps could be characterized as negligent"), *and Chizmar v. Mackie*, 896 P.2d 196, 209 (Alaska 1995) (affirming trial court's directed verdict based on conclusion that physician's alleged misdiagnosis of patient as HIV positive was not outrageous conduct even when doctor failed to warn patient that screening test upon which diagnosis was based was unconfirmed).

9. *See* Restatement (Second) of Torts, *supra* note 5, § 46 cmt. d.

10. Ketchikan Gateway Borough Code § 60.10.090(B) (governing signs permitted in residential zones).