Leta TRASK, Appellant,

v.

KETCHIKAN GATEWAY BOROUGH,
Appellee.

No. S–13590.

Supreme Court of Alaska.

June 17, 2011.

Amanda M. Schulz, Schulz & Skiles, Ketchikan, for Appellant.

Scott A. Brandt–Erichsen, Borough Attorney, Ketchikan Gateway Borough, Ketchikan, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Leta Trask painted a religious message on her roof. Ketchikan Gateway Borough filed a complaint seeking to enjoin Trask from displaying the message, arguing that the message violated a borough ordinance prohibiting roof signs. Trask counterclaimed for relief under 42 U.S.C. § 1983, arguing that the Borough's enforcement of the ordinance violated her right to free speech. The superior court concluded that Trask did not have to remove the message because it was not a "sign" for the purposes of the ordinance, dismissed Trask's § 1983 claim for lack of standing, and awarded Trask attorney's fees under the schedule provided in Alaska Civil Rule 82. Trask appeals the dismissal of her § 1983 claim and the failure to award her enhanced attorney's fees. We hold that Trask has standing to assert a § 1983 claim and that her counterclaim states a claim for relief under § 1983. We therefore reverse and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Leta Trask owns a house in the Ketchikan Gateway Borough. On August 10, 2005, Trask wrote a letter to the Borough stating that she planned to refresh and modify a painted Biblical message on her roof and asking whether her intended message would

require a permit.[1] The Borough had recently updated its ordinance relating to signs on roofs to provide that "[r]oof-mounted signs, including any signs painted on the roof surface, but excepting those mounted on a marquee or canopy, are prohibited."[2]

The Borough responded by informing Trask in a letter that she would not need a permit because the message as she described it was not a "sign" under the definition included in the Ketchikan Gateway Borough (KGB) Code.[3] Trask subsequently painted a message on her roof that read: "DO UNTO OTHERS ...: BY YOUR DEEDS YOU'RE KNOWN: LOVE YOUR NEIGHBOR: YOU'RE WELCOME." The roof also displayed a cross and two hearts. The message was painted on Trask's relatively flat roof. As a result, it was mainly visible only to her uphill neighbors.

After some of Trask's neighbors complained to the Borough about the message, the Borough sent Trask several letters informing her that the message violated the KGB Code and instructing her to remove it. In one letter, the Borough threatened that citations might be issued if Trask did not remove the message.

Trask did not remove the message, so the Borough filed a superior court complaint to enjoin Trask from displaying the message and seeking the imposition of a $200 fine. The Borough alleged that the message violated KGB Code § 60.10.090(A)(8). Trask filed a counterclaim alleging, among other things, that the Borough singled her out for enforcement based on the content of her message and that as applied to her the ordinance violated the First and Fourteenth Amendments of the United States Constitution by restricting her freedom of speech. She sought relief under 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . . [4]

The Borough moved to dismiss Trask's counterclaim to the extent it argued civil rights violations based on her state constitutional right to free speech. This motion was granted. Trask then moved for summary judgment on her First Amendment claim. She argued that the ordinance violated her First Amendment rights, that it was not content neutral, and that even if it had been, it was not a reasonable time, place and manner restriction. In other words, she argued that the ordinance was not narrowly tailored and that it could not withstand strict scrutiny. Following Trask's motion for summary judgment, the superior court found that Trask's roof message was not a "sign" as defined by KGB Code § 60.10.140. As a result, the court dismissed the Borough's enforcement action. But the superior court also concluded that Trask lacked standing to challenge the constitutionality of KGB Code § 60.10.090(A)(8). It did not address whether Trask could receive relief under § 1983 because "the parties [had] not addressed this issue." The Borough subsequently argued that the superior court's order dismissed the entire case, but Trask argued that her § 1983 claim remained viable. The superior court requested additional briefing on the § 1983 claim, and the Borough responded with a motion to dismiss. The Borough argued that its enforcement action did not violate Trask's constitutional rights.

---

**1.** The history of Trask's original Biblical roof message is described in *Lybrand v. Trask,* 31 P.3d 801 (Alaska 2001). *See infra* note 24 for a summary of this history.

**2.** Ketchikan Gateway Borough Code § 60.10.090(A)(8).

**3.** KGB Code § 60.10.140 defines sign as "[a]ny words ... [or] figures ... by which anything is made known, such as are used to designate an individual, a firm, an association, a corporation, a profession, a business or a commodity or product, which are visible from any public area and used to attract attention."

**4.** 42 U.S.C. § 1983 (2006).

Trask argued that she was entitled to relief under § 1983 because "the actions of [the Borough] in using the ordinance to demand removal of the painting and then file suit again[st][her] was an overbroad and unconstitutional application of the ordinance that had the effect of curtailing her speech." She argued that even though she never removed the sign, "fear of further prosecution kept her from making any modifications or performing any upkeep."

The superior court dismissed Trask's § 1983 action because it concluded there was no constitutional violation and Trask did not have standing to litigate the constitutionality of the ordinance.

Trask requested enhanced attorney's fees pursuant to Alaska Civil Rule 82(b)(3), arguing that she was the prevailing party because the court found that the sign ordinance did not apply to her and dismissed the Borough's cause of action. Trask argued that she should receive full reasonable fees because she minimized litigation costs, the case concerned constitutional issues, and the Borough acted in bad faith.

The court found that Trask was the prevailing party and awarded her 20% of her actual reasonable attorney's fees under Rule 82(b)(2). It chose not to award enhanced fees because it determined the Borough did not act in bad faith and no other enhancing factors applied.

Trask appeals the superior court's dismissal of her § 1983 claim and its decision to not award enhanced attorney's fees under Rule 82.

## III. DISCUSSION

### A. Standard Of Review

■ We review a trial court's decision granting or denying a motion to dismiss de novo.[5] We also review issues of standing de novo.[6]

### B. It Was Error To Dismiss Trask's § 1983 Claim.

Trask argues that the actions the Borough took in enforcing the ordinance against her to have her remove her roof message violated her right to free speech.

#### 1. Trask has standing to bring her § 1983 claim.

■ The Borough argues that Trask lacks standing to challenge the sign ordinance because the superior court correctly ruled that the message on her roof is not a "sign" and because Trask's right of free expression was not infringed; she did not remove the message.

■ Standing in Alaska generally is interpreted leniently.[7] A litigant has interest-injury standing when she has "an interest adversely affected by the conduct complained of."[8] We have said: "[W]e have long interpreted Alaska's standing requirement leniently in order to facilitate access to the courts. The basic idea ... is that an identifiable trifle is enough for standing to fight out a question of principle."[9]

The Tenth Circuit Court of Appeals has addressed cases similar to the one at hand. In *Christensen v. Park City Municipal Corporation*, the court held that

one way to establish a claim is to allege that enforcement of an express policy made by lawmakers causes a constitutional deprivation. "Local governing bodies ... can be sued directly under § 1983 ... where ... the action that is alleged to be unconstitutional implements or executes [an] ... ordinance ... officially adopted

**5.** *Varilek v. City of Houston*, 104 P.3d 849, 851 (Alaska 2004).

**6.** *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1217 (Alaska 2009) (internal citations omitted).

**7.** *State v. Planned Parenthood of Alaska*, 35 P.3d 30, 34 (Alaska 2001).

**8.** *Trustees for Alaska v. State, Dep't of Natural Res.*, 736 P.2d 324, 327 (Alaska 1987).

**9.** *Planned Parenthood*, 35 P.3d at 34 (internal citations and quotations omitted).

and promulgated by that body's officers."[10]

In *Faustin v. City of Denver, Colorado,* the Tenth Circuit held that a woman had standing to sue for damages, including nominal damages, based on any prosecution she had already experienced before a city prosecutor determined that an ordinance under which she had been prosecuted for displaying an anti-abortion banner on an overpass did not apply to her.[11] In two other cases, the Tenth Circuit found that a threat of arrest was enough to confer standing to claim retrospective damages,[12] and that litigants had standing when they were forced to leave a jurisdiction to avoid prosecution under an ordinance.[13] In contrast, that court found that a litigant lacked standing when he was "not cited, prosecuted, or even threatened with citation or prosecution"; the litigant's assertion that he was fearful he would be prosecuted for violating a statute was insufficient to provide standing.[14]

In a case similar to this one, the Eighth Circuit Court of Appeals ruled that although a plaintiff did not have standing for injunctive relief, she had standing to claim damages under § 1983 for an as-applied challenge even though she was not prosecuted and the city declared the ordinance inapplicable to her.[15]

Here, Trask's alleged injuries are more than merely trifling.[16] Her suit pertains to a question of principle: She is arguing that her First Amendment rights were actually and prospectively violated by the Borough because the Borough's enforcement action was aimed directly at her. We agree. Although she was not prosecuted for violating the Borough ordinance, the Borough ordered her to remove her message, threatened her with

citations for violating the ordinance, and filed a complaint against her in which it requested injunctive relief prohibiting her from displaying the message, the imposition of a $200 civil penalty, and attorney's fees and costs. As a result of the enforcement actions, Trask alleges that she did not refresh or modify her roof paintings. By alleging that the Borough infringed on her right to free speech through an enforcement action that was aimed directly at her, she has articulated enough of an injury to confer interest-injury standing. Because Trask alleged an injury that confers standing, we must next address whether Trask can receive relief under § 1983.

### 2. Trask presented an actionable § 1983 claim.

■ Trask argues that she is entitled to relief under § 1983 as a result of the Borough's actions. She stated in her counterclaim that the Borough sued her for violating KGB Code § 60.10.090(A)(8), seeking injunctive relief and a monetary penalty. Trask alleged that the KGB Code "violates the First and Fourteenth Amendments ... as applied because it creates an effective ban on constitutionally protected speech" and because "it is not the least restrictive means of accomplishing any compelling governmental purpose." She alleged that "[b]y enforcing KGB Code §§ 60.10.090(A) & (B), Ketchikan Gateway Borough, acting under the color of state law, deprived and is depriving, Leta Trask of her rights guaranteed and protected by the United States Constitution" and that the Borough "is liable for any such actions which violate Leta Trask's constitutional rights." The counterclaim expressly stated

**10.** 554 F.3d 1271, 1279 (10th Cir.2009) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

**11.** 268 F.3d 942, 948 (10th Cir.2001).

**12.** *PETA v. Rasmussen,* 298 F.3d 1198, 1203 (10th Cir.2002).

**13.** *Dias v. City of Denver,* 567 F.3d 1169, 1178 (10th Cir.2009).

**14.** *Winsness v. Yocom,* 433 F.3d 727, 732 (10th Cir.2006).

**15.** *Harmon v. City of Kansas City, Mo.,* 197 F.3d 321 (8th Cir.1999).

**16.** Trask had a history of expressing her Biblical messages on her roof. *See supra* note 1. It is apparent that Trask wanted to express a new message (indeed, she did so), and thus "refreshing or modifying" her message was her way of saying she wanted to exercise her constitutional right to speak. This provides ample grounds for standing and is certainly more than a "mere trifle."

that her claims were in part based upon 42 U.S.C. § 1983.

■ The Borough argues that Trask's claim is not a proper § 1983 claim. The Borough originally filed a motion to dismiss under Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted. It is unclear whether the superior court dismissed the claim as a Civil Rule 12(b)(6) dismissal for failure to state a claim or as a Civil Rule 56(c) dismissal on summary judgment. In context, it appears the superior court dismissed Trask's claim under a Rule 12(b)(6) analysis, and we have analyzed the court's order accordingly.[17] To survive a motion to dismiss, a complaint need only allege a set of facts consistent with and appropriate to some cause of action.[18]

■ In evaluating a § 1983 claim against a municipality, a court must consider: "(1) whether plaintiff's harm was caused by a constitutional violation, and if so, (2) whether the city is responsible for that violation." [19]

■ First, then, we must consider whether Trask alleged a set of facts consistent with a constitutional violation. The regulated speech at issue here is a Biblical message displayed on private property.[20] When assessing whether a time, place, or manner restriction on residential messages is constitutional, the court must first determine whether the restriction is content-neutral or content-based.[21] The government may impose content-neutral time, place, or manner restrictions on protected speech if the restrictions "are narrowly tailored to serve a significant governmental interest, and [if] they leave open ample alternative channels for communication of the information." [22] Content-based restrictions are constitutional if the statute or ordinance is "tailored to serve a compelling state interest and is narrowly drawn to achieve that end." [23]

Trask alleged that the actions of the Borough in applying the ordinance to her were "an overbroad and unconstitutional application of the ordinance that had the effect of curtailing her speech" and that "fear of further prosecution kept her from making any modifications or performing any upkeep." Assuming that her allegations are true, as we must when evaluating a Rule 12(b)(6) motion to dismiss, Trask alleged a set of facts consistent with stating a claim that her speech—a message displayed on private property—was protected.[24]

---

**17.** Even if the superior court dismissed Trask's claim by summary judgment pursuant to Civil Rule 56(c), Trask has alleged facts consistent with stating an actionable § 1983 claim and raised genuine issues of material fact sufficient to defeat a motion for summary judgment.

**18.** *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006) (internal quotations omitted).

**19.** *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

**20.** The U.S. Supreme Court emphasized the importance of signs located on private property in *City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). It noted that "[a] special respect for individual liberty in the home has long been part of our culture and our law ...; that principle has special resonance when the government seeks to constrain a person's ability to speak there." *Id.* at 58, 114 S.Ct. 2038. The Court discussed the uniqueness of signs: "Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the 'speak-

er.'" *Id.* at 56, 114 S.Ct. 2038. The Court also noted that "[r]esidential signs are an unusually cheap and convenient form of communication ... [that] may have no practical substitute." *Id.* at 57, 114 S.Ct. 2038.

**21.** *Crawford v. Lungren*, 96 F.3d 380, 384 (9th Cir.1996) (The "principal inquiry" in determining whether a regulation is content-neutral or content-based "is whether the government has adopted [the] regulation ... because of [agreement or] disagreement with the message it conveys. As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based.") (citing *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)).

**22.** *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (internal quotations omitted).

**23.** *Crawford*, 96 F.3d at 384 (internal quotations omitted).

**24.** *E.g., City of Ladue*, 512 U.S. at 48, 114 S.Ct. 2038 (explaining that "signs are a form of expression protected by the Free Speech Clause").

Trask also alleged facts consistent with a claim that the Borough's application of the ordinance to her did not serve any significant governmental interest given the Borough's initial position, confirmed by the superior court, that the ordinance did not apply to Trask's sign at all. In a letter to the Borough dated August 10, 2005, Trask requested written confirmation that she did not need a permit for the message on her roof. The Borough responded in writing that Trask did not need a permit. Trask painted the sign on her roof. Trask's neighbors, who lived uphill and adjacent to Trask's property, complained to the Borough.[25] After this complaint, the Borough changed its position on whether Trask's message was a sign.

In addition, in determining that the ordinance did not apply to Trask's message, the superior court found that the ordinance was meant to regulate only commercial signs, not residential signs. The court also found that Trask's message appeared to be "the only non-commercial 'sign' to have ever been an issue for the [Borough]." Trask's factual allegations are consistent with a constitutional violation and sufficient to overcome the Borough's motion to dismiss.

 Trask must also allege facts consistent with stating a claim that the Borough is responsible for that violation. To show municipal liability, a litigant must "demonstrate that, through its *deliberate* conduct, the mu-

nicipality was the 'moving force' behind the injury alleged."[26] When a litigant claims that "a particular municipal action *itself* violates federal law, . . . resolving these issues of fault and causation is straightforward."[27]

Trask expressly alleged that the Borough's enforcement of the ordinance against her violated her First Amendment right to free speech. This claim is clear and straightforward. Taking Trask's allegation as true, she has successfully set forth facts stating a claim that the Borough is responsible for the constitutional violation.[28]

### 3. *Imbler v. Pachtman* does not confer immunity on the Borough.

The Borough argues that it is entitled to absolute immunity from Trask's claim under the holding in *Imbler v. Pachtman*.[29] But *Imbler* does not apply to this case because it provides that prosecutors, not municipalities, are absolutely immune, and addresses a malicious prosecution claim, not a free speech claim.[30] The Borough's argument that "[t]he prosecution of a violation of an ordinance is not actionable under § 1983" is also inapplicable to this case. The Eighth Circuit case upon which the Borough relies provides that "an action for malicious prosecution *by itself* is not punishable under § 1983. . . ."[31] But Trask is not claiming malicious prosecution; she is claiming violation of the First Amend-

---

**25.** The contentious early history between Trask and her neighbors was described in *Lybrand v. Trask*, 31 P.3d 801, 802 (Alaska 2001). After fire damaged the Lybrand's home, uphill and adjacent to Trask's property, the Lybrands rebuilt their home. Debris fell from their property onto Trask's property. The parties were unable to resolve their dispute amicably. Trask painted the following Biblical passages in large print on her roof: " 'DO UNTO OTHERS,' 'LUK 6:31 MAT 7:12 19:19,' 'LOVE THY NEIGHBOR,' 'BY THIER [sic] (DEEDS) YE SHALL KNOW THEM,' 'MAT 7:20.' " George Lybrand sought a superior court injunction ordering Trask to remove the message. Elizabeth Lybrand sought damages for intentional infliction of emotional distress, claiming Trask painted the message for vexatious and retaliatory purposes.

**26.** *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (emphasis in original).

**27.** *Id.* (emphasis in original).

**28.** *Christensen*, 554 F.3d at 1279–80 (determining that plaintiff's arguments that "[t]he challenged ordinances . . . are not narrowly tailored and violate the First Amendment . . . [and that] ordinances as applied violate the constitutional rights of plaintiff" to engage in protected activity were "sufficient to establish a claim of municipal liability" because "[i]f a governmental entity makes and enforces a law that is unconstitutional as applied it may be subject to liability under § 1983.") (citations omitted).

**29.** *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**30.** *Id.* at 422–23, 96 S.Ct. 984.

**31.** *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir.2000) (internal alterations omitted) (emphasis added).

ment, which is actionable under § 1983.[32] The Supreme Court has clearly stated that "municipalities have no immunity from damages liability flowing from their constitutional violations...."[33]

#### 4. Trask alleges sufficient injury to sustain a § 1983 claim.

Trask has asserted an actionable § 1983 claim, and in order to obtain relief under § 1983, she does not have to allege any specific damages or injury. A litigant may recover nominal damages for a § 1983 claim for violation of First Amendment rights "even without proof of actual injury."[34] Especially at the pleading stage, a litigant need not show a complete chilling of First Amendment rights; it is sufficient for a litigant to allege facts showing that "an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."[35] The litigant does not have to show that her speech was "actually inhibited or suppressed."[36] Because Trask has alleged facts sufficient to state a claim under § 1983, it was error to dismiss Trask's counterclaim. Trask's § 1983 claim is remanded for further proceedings.

#### C. Attorney's Fees

The superior court awarded Trask attorney's fees under Civil Rule 82(b)(2), which provides that "the prevailing party in a case resolved without trial [shall receive] 20 per-

cent of its actual attorney's fees which were necessarily incurred." She argues it was error to not award her full reasonable fees under Civil Rule 82(b)(3).

Because we are reversing the superior court's dismissal of Trask's § 1983 claim and remanding to the superior court for further proceedings consistent with this opinion, we vacate the award of Civil Rule 82 attorney's fees. Because we vacate the award, we need not decide whether it was error to deny Trask's claim for enhanced Civil Rule 82(b)(3) attorney's fees. In light of the foregoing analysis, we note that if Trask prevails on her § 1983 action, she may be entitled to attorney's fees under 42 U.S.C. § 1988(b).[37]

### IV. CONCLUSION

We REVERSE the superior court's dismissal of Trask's § 1983 claim because Trask had standing to assert a § 1983 claim and she alleged a set of facts stating a claim that the Borough violated her right to free speech. We also VACATE the attorney's fees award and REMAND to the superior court for further proceedings consistent with this opinion.

---

32. Federal Civil Rights Act, 42 U.S.C. § 1983 (1976) provides in relevant part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

33. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 657, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

34. *Yniguez v. Arizonans for Official English*, 42 F.3d 1217, 1243 (9th Cir.1994).

35. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir.1999) (internal citations omitted).

36. *Id.* (internal citations omitted).

37. 42 U.S.C. § 1988(b) (2000) provides: "In any action or proceeding to enforce a provision of section[] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs...."