NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LETA TRASK, | ) | |
| | ) | Supreme Court No. S-14937 |
| Appellant, | ) | |
| | ) | Superior Court No. 1KE-07-00437 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KETCHIKAN GATEWAY | ) | AND JUDGMENT* |
| BOROUGH, | ) | |
| | ) | No. 1536 - April 1, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Trevor Stephens, Judge.

Appearances: Bryan T. Schulz, Ketchikan, for Appellant. Scott A. Brandt-Erichsen, Borough Attorney, Ketchikan Gateway Borough, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

Stowers, Justice, with whom Winfree, Justice, joins, dissenting.

## I.    INTRODUCTION

Leta Trask owns a home in Ketchikan, and she has a biblical message painted on the roof. The Ketchikan Gateway Borough (Borough) sued in superior court to enforce a local ordinance regulating roof signs, and Trask counterclaimed under 42 U.S.C. § 1983. The superior court determined that because the ordinance itself was not

---

\*    Entered under Alaska Appellate Rule 214.

unconstitutional, Trask would have had to allege an additional Borough policy or practice (besides enactment of the ordinance) that violated her constitutional rights. The court granted summary judgment to the Borough under this reasoning. Trask appeals, arguing that the ordinance does not need to be unconstitutional for its attempted enforcement to violate her constitutional rights. We affirm the superior court's decision because Trask's brief does not argue that the Borough sign ordinance was facially unconstitutional and because Trask concedes there is no evidence that the Borough attorney made a separate policy decision to prosecute her based on the content of her speech.

## II.    FACTS AND PROCEEDINGS

In 2004 the Borough amended its ordinance regarding roof signs to provide that "[r]oof-mounted signs, including any signs painted on the roof surface . . . are prohibited."[1] Trask owns a house in the Borough, and in August 2005 she wrote a letter to the Borough Planning Department, stating her intent to refresh a biblical message painted on her tar roof and asking for confirmation that no permit was required for such action. The Planning Department informed Trask that she would not need a sign permit because her proposed design did not meet the KGBC's definition of a sign.

However, after Trask's neighbors complained to the Borough about the roof message, the Borough attorney sent a letter to Trask explaining that the message on her

---

[1]    Ketchikan Gateway Borough Code (KGBC) 18.35.050(b)(7) (2015). The KGBC has been renumbered since this case began in 2007. Throughout much of the litigation, the relevant section was numbered KGBC 60.10.090(A)(8). *See Trask v. Ketchikan Gateway Borough* (*Trask I*), 253 P.3d 616, 618 n.2 (Alaska 2011). For ease of reference, we will refer to the relevant section as the "ordinance," as it is the only section at issue.

roof did appear to fall within the definition of a sign.[2]  Trask then asked whether the painting of a flag on the roof of a local business would violate the ordinance.  In response, the Borough attorney wrote that the painting of a flag would not violate the ordinance unless it contained words, letters, numerals, or other matter falling within the definition of a sign.[3]  The Borough attorney's response also threatened a citation if Trask did not remove the offending sign from her roof.

In September 2007 the Borough attorney filed a complaint in the superior court to enjoin further display of Trask's roof sign and to impose a $200 fine.  Trask's counterclaim alleged that by enforcing the ordinance the Borough had deprived her of constitutional rights protected by 42 U.S.C. § 1983.[4]

---

[2]     The KGBC defines "sign" as:

> any words, lights, letters, parts of letters, figures, numerals, phrases, sentences, emblems, devices, trade names or trademarks by which anything is made known, such as are used to designate an individual, a firm, an association, a corporation, a profession, a business or a commodity or product, which are visible from any public area and used to attract attention.

KGBC 18.05.200(d) (2015).  Formerly, this section was numbered as KGBC 60.10.140. *See Trask I*, 253 P.3d at 618 n.3.

[3]     In an interrogatory response, the Borough later confirmed that it did not prosecute the business owner because the flag painting was not a "sign."

[4]     42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

(continued...)

In April 2009 the superior court ruled that the Borough's sign ordinance did not apply to Trask's display and that she therefore did not have standing to challenge its constitutionality. The court then dismissed Trask's § 1983 counterclaim. Trask appealed to this court, which reversed the superior court's order.[5] We held that Trask did have standing to sue for any injuries she had sustained and that her complaint stated a viable claim for violation of her right to free speech.[6]

On remand, the superior court determined that the sign ordinance was not facially unconstitutional, nor was it unconstitutional as applied to Trask's roof message. However, the court left open the possibility that Trask's § 1983 claim remained viable. Trask moved for reconsideration, arguing that the Borough's enforcement of an inapplicable ordinance violated her constitutional rights. The court denied her motion, but raised a question about whether Trask would have to allege an unconstitutional Borough policy or custom above and beyond the adoption of the ordinance to state a viable § 1983 claim. The following month the superior court ordered supplemental briefing, and ultimately decided that "Ms. Trask's legal theory could not support a jury finding of liability under § 1983." Trask now appeals the dismissal of her § 1983 counterclaim and the court's denial of summary judgment in her favor.[7]

---

[4](...continued)
    at law . . . .

[5]    *Trask I*, 253 P.3d at 619, 623.

[6]    *Id.* at 619-23.

[7]    We review a grant or denial of summary judgment de novo. *Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007) (quoting *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005)).

## III. DISCUSSION

Trask's opening brief on appeal did not address the superior court's decision that the sign ordinance is constitutional, nor did it contain any meaningful argument that the ordinance is unconstitutional. In response, the Borough argued that Trask had waived this issue. And instead of replying to this argument, Trask chose not to file a reply brief. We conclude Trask has waived the issue of the ordinance's constitutionality by failing to include it in her appellate briefing.[8]

Trask's brief addresses only the superior court's subsequent ruling that she was required to show that the Borough's enforcement action was based on a municipal policy other than the ordinance. She argues that "the ordinance pursuant to which proceedings were brought by the Ketchikan Gateway Borough against Leta Trask was duly promulgated by the Ketchikan Gateway Borough" and that "[t]o require that Leta Trask must also show the existence of a separate decision, policy or custom, makes little sense[.]"

However, one of the required elements of a § 1983 claim is "conduct [that] deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."[9] The superior court's ruling established that the Borough ordinance did not deprive Trask of her right to free speech. So the superior court correctly required Trask to show some other Borough policy or custom to support her claim.

---

[8] *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598 (Alaska 2012) (citations omitted). Trask conceded at oral argument that her brief had failed to make any argument as to the constitutionality of the ordinance.

[9] *Diaz v. State, Dep't of Corr.*, 239 P.3d 723, 727 (Alaska 2010) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).

Trask relies on *Christensen v. Park City Municipal Corp.*, in which the Tenth Circuit held that a plaintiff may state a § 1983 claim against a municipality by alleging "that enforcement of an express policy made by lawmakers cause[d] a constitutional deprivation."[10] The Tenth Circuit recognized that city ordinances unquestionably "reflect the 'official policy' of the municipality."[11] Thus municipalities may be liable under § 1983 when "the action that is alleged to be unconstitutional implements or executes a[n] . . . ordinance . . . officially adopted and promulgated by that body's officers."[12] Trask argues that here, as in *Christensen*, the unconstitutional act was the attempt to enforce a municipal ordinance.

However, as the superior court noted, the plaintiff in *Christensen* alleged that the relevant ordinances were unconstitutional.[13] The *Christensen* court held that the city would be liable under § 1983 only "[i]f it turns out that the relevant ordinances are unconstitutional, whether on their face or as applied to Mr. Christensen."[14] Here, the superior court determined that the Borough ordinance is not unconstitutional, either facially or as applied to Trask. As noted above, Trask does not challenge that determination in her brief.

---

[10]     554 F.3d 1271, 1279 (10th Cir. 2009).

[11]     *Id.*

[12]     *Id.* (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)) (internal quotation marks omitted).

[13]     *Id.*

[14]     *Id.*; *see also id.* at 1280 ("If a governmental entity makes and enforces a law that is unconstitutional as applied, it may be subject to liability under § 1983." (citation omitted)).

Trask also relies on *Faustin v. City & County of Denver*.[15] There, a local government attempted to prevent the plaintiff from displaying an anti-abortion banner on a highway overpass under a sign ordinance that was ultimately deemed inapplicable.[16] But the *Faustin* plaintiff also challenged the police department's separate policy of "prohibiting all expression on overpasses," a policy that the department specifically admitted.[17] The Tenth Circuit concluded that this police department policy was subject to a First Amendment challenge.[18] In this case, however, Trask makes no claim that the Borough has any such policy regarding roof displays. As the superior court recognized, the Borough sign ordinance specifically allows certain types of roof signs.[19]

The rationale of the *Faustin* case would support a § 1983 claim in this case if Trask alleged that the Borough attorney separately violated Trask's right to free speech. For example, the dissenting opinion points out that Trask could allege that the Borough attorney made a policy decision to bring this prosecution because of the content of her speech.[20] But Trask has disclaimed or abandoned this argument at nearly every opportunity.

---

[15]    268 F.3d 942 (10th Cir. 2001).

[16]    *Id.* at 945-46.

[17]    *Id.* at 950.

[18]    *Id*.

[19]    KGBC 18.35.050(b)(7) (2015).

[20]    *See Barber v. Municipality of Anchorage*, 776 P.2d 1035, 1037 (Alaska 1989) ("[T]he first amendment of the United States Constitution 'forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.' " (quoting *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984))).

In her summary judgment briefing, Trask argued that the sign ordinance was not content-neutral and that the existence of flag paintings on local businesses suggested that the ordinance was being applied "with reference to content." But when Trask was prompted to clarify the basis for her claims, she did not argue that the Borough attorney had adopted a policy to prosecute her based on the content of her speech. Instead she accepted the explanation from the Borough attorney's initial correspondence: "Ms. Trask does not believe that there is sufficient evidence to show that [the Borough's] attempted enforcement of the ordinance was made in other than a good faith belief as to [the] applicability [of the sign ordinance] to Ms. Trask's roof." Trask's factual concession regarding this issue appears to foreclose the argument referenced in the dissenting opinion.[21]

Based on this concession, the superior court noted, "Ms. Trask acknowledges in her supplemental brief that she is not claiming that the [Borough] Attorney acted other than in good faith with respect to the enforcement action at issue." Trask has not disputed this conclusion in her brief in this appeal. And Trask's appellate brief is otherwise consistent with the concession she made in the superior court: She does not make any argument that the Borough attorney adopted a separate policy to prosecute her based on the content of her speech.

Instead Trask argues she should not have been required to show any policy decision other than the Borough ordinance: "[T]he ordinance pursuant to which proceedings were brought by the Ketchikan Gateway Borough against Leta Trask was duly promulgated by the Ketchikan Gateway Borough. . . . To require that Leta Trask must also show the existence of a separate decision, policy or custom, makes little

---

[21] *See Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 71 P.3d 811, 818-19 (Alaska 2003) (concluding that facts conceded in the trial court cannot be contested on appeal).

sense . . . ." Trask has waived the argument referenced in the dissenting opinion because this argument was not included in her appellate brief.[22]

Trask clarified her position at oral argument before this court. Her attorney was asked, "Is there any place in the record where you've asserted that [the Borough attorney] made a decision to prosecute Ms. Trask because of the content of her message?" He responded, "The answer to that is no." Trask's attorney said his client was asserting "the opposite contention" — that "this ordinance was pursued by [the Borough attorney] in good faith."

Trask's attorney added that "this wasn't a vendetta" and that there was "no allegation of malicious prosecution." He also argued that "the Borough's *ordinance* is not content neutral." (Emphasis added.) But these statements were consistent with Trask's straightforward admission that the Borough attorney did not prosecute her because of the content of her speech. Again, this statement appears to give up the claim discussed in the dissenting opinion. And this concession was entirely consistent with the way Trask represented her claim to the superior court: The Borough attorney's decision was based on "a good faith belief as to [the] applicability [of the sign ordinance] to Ms. Trask's roof."

In summary, Trask's brief does not adequately argue that the Borough sign ordinance was unconstitutional. And Trask has not asserted a claim that the Borough attorney made a separate policy decision that infringed her right to free speech, either in the superior court or in this appeal. We must affirm the superior court because Trask has not shown any grounds to impose liability under § 1983.[23]

---

[22] *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598 (Alaska 2012).

[23] We do not need to address the issues Trask raises concerning a motion in (continued...)

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

---

[23](...continued)
limine and attorney's fees because we affirm the superior court's order dismissing Trask's counterclaim.

STOWERS, Justice, with whom WINFREE, Justice, joins, dissenting.

I respectfully dissent from today's decision because I do not believe Leta Trask waived or conceded her claim that the Ketchikan Gateway Borough applied its sign ordinance in an unconstitutional manner. I would hold that Trask may continue pursuing her First Amendment claim under 42 U.S.C. § 1983 that the Borough Attorney adopted a policy of enforcing the ordinance in a manner that was not content neutral. And given that this case is before the court after a decision on cross-motions for summary judgment, I would remand for further proceedings regarding Trask's claim because there are genuine issues of material fact.[24]

Trask painted biblical and other phrases, a cross, and hearts on the roof of a property she owns in Ketchikan. There are also two buildings in Ketchikan that have American flags painted on their roofs. Although the Borough filed a complaint against Trask, claiming that her roof signs violated the sign ordinance, the Borough took the position that the painted flags did not violate the ordinance.

Trask noted this differing treatment in support of her motion for partial summary judgment, arguing:

> KGB's sign ordinance is not content neutral. As noted above, Leta Trask is charged with maintaining a roof sign in violation of KGB Code § 60.10.090(A)(8), for painting phrases directly upon her roof. At first glance, this section would appear to be content neutral. Nowhere within KGB Code § 60.10.090 does it provide a specific exemption for flags to be painted directly upon roofs. However, it is apparent that the code administrator is allowing such an exemption. Therefore, KGB Code § 60.10.090(A)(8) is

---

[24] *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 519-20 (Alaska 2014) ("[S]ummary judgment is appropriate only when no reasonable person could discern a factual dispute on a material issue.").

being applied in the case at hand with reference to content.
(Footnote omitted.)

She also provided pictures of the two buildings with American flags painted on their roofs. She again referenced the flags in a motion for reconsideration where she stated:

> Whether the [Borough] chose to unevenly enforce the inapplicable ordinance (e.g. by choosing to pursue written messages painted onto a roof and not to pursue flags painted onto roofs) undercuts the constitution[ality] of the ordinance's application to Ms. Trask. The preference of a painted flag over the written word is [a] strong suggestion that the ordinance is *not content neutral as applied*.
> (Emphasis in original.)

In her briefing before this court, Trask broadly argued that the Borough had unconstitutionally enforced the sign ordinance against her.

Despite the alleged selective enforcement, Trask has asserted a § 1983 claim only, and not a malicious prosecution claim. Indeed, Trask has been particularly careful not to accuse the Borough Attorney of engaging in malicious prosecution. The distinction between malicious prosecution and a § 1983 claim is important because it provides context for the statements Trask's counsel made at oral argument — the same statements in which the court today finds a concession.

We have previously held that a malicious prosecution claim requires "(1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; and (4) 'malice[,]' or a primary purpose other than that of bringing an offender to justice."[25] Given that Trask apparently uncovered no evidence that the

---

[25] *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007) (quoting *Stephens v. State, Dep't of Revenue*, 746 P.2d 908, 911 (Alaska 1987)).

Borough Attorney acted with malice or an improper motive, a malicious prosecution claim would necessarily fail.[26]

Unlike malicious prosecution, a § 1983 claim "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying [constitutional] right."[27] "Content-based regulations are presumptively invalid" under the First Amendment and because of that presumption generally do not require an independent showing as to the defendant's state of mind.[28] Thus, although Trask would need to show that the decision to prosecute her was based on the content of the paintings on her roof, she would not need to show malice or an improper motive.

This difference, and Trask's recognition that she lacked evidence of bad faith, let alone evidence of malice, helps explain her arguments before this court. At oral argument, the court sought to clarify the basis for Trask's claims in the following exchange:

**Justice Bolger:**

> Are you saying then that the violation was the decision to prosecute Ms. Trask because her sign contained . . . letters, rather than a symbol like a flag? . . . [I]s that the extent of your argument concerning a constitutional violation? Is that the discrimination that was involved here?

---

[26]     *See id*.

[27]     *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (quoting *Daniels v. Williams*, 474 U.S. 327, 330 (1986)) (internal quotation marks omitted).

[28]     *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (citing *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991)).

**[Trask's Counsel]:**

> In part. I think it gets — it gets a starting point. It gets a jumping off point. Well, then why would that distinction be important in terms of constitut . . . .

**Justice Bolger:**

> Well, let me ask one . . . .

> . . . .

> . . . follow up question then. . . . [I]s there any place in the record where you've asserted that [the Borough Attorney] made a decision to prosecute Ms. Trask because of the content of her message?

**[Trask's Counsel]:**

> The answer to that is no. In fact, the opposite contention was made, is that is, that this ordinance was pursued by [the Borough Attorney] in good faith. That this wasn't a vendetta. *I mean there is no allegation of malicious prosecution. There's a misapplication, and I think a constitutional one, of this ordinance to Ms. Trask's roof.* That, that stand [sic] firm on. But it wasn't for malicious — it wasn't to — "We don't like you talking." *But it is, "We don't like you talking in that manner."* And that's where — *that's where I think the Borough's ordinance is not content neutral. "We don't like you talking like that from your painted roof."*[29] (Emphasis added.)

I do not read the quoted language above as a concession there was no

evidence that Trask was prosecuted based on the content of her speech. In context, and

---

²⁹      An unofficial transcript of Trask's rebuttal argument before this court is provided as Appendix A. The transcript demonstrates that Trask's counsel made no intentional concessions: at worst, he struggled to understand and answer the court's questions while maintaining Trask's claim that the Borough's enforcement of the ordinance was not content neutral.

with the understanding of the differences between malicious prosecution and a § 1983 claim, I believe Trask's counsel, consistent with his earlier position, was arguing there was no evidence of malicious prosecution — not that there was no evidence that the Borough's application of the sign ordinance infringed on Trask's First Amendment rights. In fact, Trask's counsel knew such evidence existed because Trask's briefing before the superior court discussed the importance of the two other buildings with American flags painted on their roofs as compared to the biblical and other messages Trask painted on her roof.

I agree that the question Trask's counsel was asked was direct and on point: "[I]s there any place in the record where you've asserted that [the Borough Attorney] made a decision to prosecute Ms. Trask because of the content in her message?" Trask's counsel's answer was similarly direct: "The answer to that is no." But his next statement indicates his confusion regarding the question itself: "[T]his ordinance was pursued by [the Borough Attorney] in good faith. . . . [T]his wasn't a vendetta. . . . [T]*here is no allegation of malicious prosecution*." (Emphasis added.) And his next statements clearly indicate that Trask *was* alleging enforcement of the Borough ordinance based on the content of her message:

> There's a misapplication, and I think a constitutional one, of this ordinance to Ms. Trask's roof. That — that stand [sic] firm on. . . . But it is, "We don't like you talking in that manner." And that's where — that's where I think the Borough's ordinance is not content neutral. "We don't like you talking like that from your painted roof."

In context, I believe counsel was indicating that there was no evidence in the record that the Borough Attorney had prosecuted Trask with malice, as opposed to there being no

evidence that the Borough Attorney had prosecuted her based on the content of her sign.[30]

I also find it notable that, prior to making this statement, Trask's counsel indicated that part of Trask's claim was that her First Amendment rights were violated because the Borough prosecuted her, but not those who had painted flags on their roofs. Additionally, Trask's counsel briefly argued that the Borough could not justify its decision to prosecute Trask on the basis of aesthetics because "you have this dichotomy between the flag and the writings." These statements reflect Trask's argument to the superior court that the ordinance was not being enforced in a content-neutral manner.

It is on this record that the court finds a concession. While I agree counsel's responses were inartful, I do not believe they amounted to a concession. Moreover, finding a concession in light of such ambiguous statements is inconsistent with the many other situations in which this court has preferred to keep the courthouse doors open absent other considerations. For example, Alaska law requires only an "identifiable trifle" to demonstrate a sufficient personal stake to pursue a claim under our interest-injury test.[31] Our courts similarly apply a "lenient standard for withstanding summary judgment"[32] because that "low standard for surviving summary judgment

---

[30]    There is a difference between *malicious* government enforcement and content-based enforcement: a well-meaning government official could, *in good faith*, take action believing the content of a message violated an ordinance without realizing that any constitutional infringement was involved.

[31]    *Keller v. French*, 205 P.3d 299, 304-05 (Alaska 2009) (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1040-41 (Alaska 2004)) (internal quotation marks omitted).

[32]    *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) (quoting *Shaffer v. Bellows*, 260 P.3d 1064, 1069 (Alaska 2011)) (internal quotation (continued...)

serves the important function of preserving the right to have factual questions resolved by a trier of fact only after following the procedures of a trial."[33]  These standards promote access to the courts and encourage the trial courts to provide parties with a hearing on the merits of their disputes.  Finding a concession in the confused and ambiguous responses the court received here is incongruous with these standards.

I agree with the court's analysis insofar as it concludes that *Faustin v. City & County of Denver, Colorado*[34] supports a § 1983 claim where the plaintiff alleged that a municipal employee enforced an ordinance against her in an unconstitutional manner based on the content of her speech.  Given that I find no waiver or concession of Trask's argument that the Borough unconstitutionally enforced the ordinance against her based on the content of her roof paintings, I would further conclude that there is a genuine issue of material fact regarding whether the Borough made such a decision with respect to Trask.  On the one hand, Trask has introduced evidence tending to show that owners of buildings that had flags painted on their roofs were not prosecuted under the sign ordinance while she was prosecuted for her biblical and other messages.  This raises the inference that the reason the Borough prosecuted Trask was the content of her message.  And in reviewing a motion for summary judgment, the court must view the evidence in

---

[32](...continued)
marks omitted); *see also Meyer v. State, Dep't of Revenue*, 994 P.2d 365, 366, 368 (Alaska 1999) (holding summary judgment in suit to establish paternity was inappropriate because the alleged father submitted an affidavit denying he had engaged in sexual relations with the mother around the time of conception even though a DNA test demonstrated there was a 99.98% chance that he was the child's father).

[33]     *Christensen*, 335 P.3d at 521.

[34]     268 F.3d 942 (10th Cir. 2001).

the light most favorable to the motion's opponent and grant reasonable inferences in that opponent's favor.[35]

On the other hand, evidence in the record indicates that the Borough Attorney did not enforce the ordinance against the buildings with flags on their roofs because he did not believe those displays were "signs" within the meaning of the sign ordinance, which is a content-neutral explanation for the lack of enforcement. Thus there is a genuine issue of material fact regarding the Borough Attorney's reason for prosecuting Trask and not other building owners. Based on this conflict, I would affirm the superior court's denial of Trask's motion for partial summary judgment, reverse the superior court's grant of summary judgment to the Borough on this limited claim, and remand for further proceedings.[36] Therefore, I respectfully dissent.

---

[35]    *Christensen*, 335 P.3d at 517, 520.

[36]    Trask also raised several issues related to a motion in limine and motion for attorney's fees the superior court granted. As the court does not address these issues and they do not affect whether this case should be remanded back to the superior court, I do not discuss them here.

## Appendix A

**Chief Justice Fabe:**

Thank you.  Mr. Schulz?

**Mr. Schulz:**

Thank you.  Like to address more the question of the policy.  The policy is the ordinance.  It's the interpretation, the understanding of what that policy is, is why you would look at other parts of the ordinance to figure out what the heck a sign is.  And that was the reference there.

The reference to the Borough made a decision to pursue Ms. Trask as opposed to the other roofs, the other paintings, the other signs, is this.  Ms. Trask was told, the superior court was told, "Well, flags aren't signs, that's why."  Well, that's a policy decision.  Then the question is well, who made the policy decision?  That certainly is an issue.  The Borough owns this decision.  The Borough sued Ms. Trask for, well, a year and a half or a year and however many months it was until the superior court told them, "You can't have that policy.  You don't have the policy."  Until then, that the Borough's unaware that they're suing Ms. Trask over a constitutional violation seems a stretch.  In fact, the opposite, I don't think it's far fetch —  I mean, I don't think it's at all far-fetched to say the Borough, as, as a body knew this had been going on for years.

**Justice Bolger:**

Let me ask you about that point.

**Mr. Schulz:**

Yeah.

**Justice Bolger:**

Are you saying then that the violation was the decision to prosecute Ms. Trask because her sign contained figures, I mean letters, rather than a symbol like a flag?  Was there — is that the extent of your argument concerning a constitutional violation?  Is that the discrimination that was involved here?

**Mr. Schulz:**

In part. I think it gets — it gets a starting point. It gets a jumping off point. Well, then why would that distinction be important in terms of constitut . . . .

**Justice Bolger:**

Well, let me ask one . . . .

**Mr. Schulz:**

Oh, ok.

**Justice Bolger:**

. . . follow up question then. Are you — are you — is there any place in the record where you've asserted that Mr. Brandt-Erichsen made a decision to prosecute Ms. Trask because of the content of her message?

**Mr. Schulz:**

The answer to that is no. In fact, the opposite contention was made, is that is, that this ordinance was pursued by Mr. Brandt-Erichsen in good faith. That this wasn't a vendetta. I mean there is no allegation of malicious prosecution. There's a misapplication, and I think a constitutional one, of this ordinance to Ms. Trask's roof. That — that stand firm on. But it wasn't for malicious — it wasn't to — "We don't like you talking." But it is, "We don't like you talking in that manner." And that's where — that's where I think the Borough's ordinance is not content neutral. "We don't like you talking like that from your painted roof."

**Justice Bolger:**

Well . . . .

**Justice Winfree:**

See, that's the . . . .

**Justice Bolger:**

. . . would you agree with this . . . .

**Mr. Schulz:**

(Indistinct)

**Justice Winfree:**

. . . no, go ahead.

**Justice Bolger:**

. . . do you agree with this proposition then, if you're not saying that Mr. Brandt-Erichsen did anything that violated the constitution, then doesn't your case win or lose on the basis of whether the Borough ordinance is constitutional?

**Mr. Schulz:**

My — if I can answer it this way, 'cause I just, I just have trouble analyzing the constitutionality of an ordinance that, I mean, we can all sit here and agree it doesn't apply to this now in hindsight. If I can rephrase it in terms of a policy. And that is . . . .

I'm sorry you're gonna have to repeat the question 'cause I talked too much . . . .

**Justice Bolger:**

If you're not . . . .

**Mr. Schulz:**

. . . and lost it.

**Justice Bolger:**

. . . if you're not saying that the Borough attorney did anything illegal, then aren't you limited to either winning or losing on the basis of whether the Borough ordinance is illegal?

**Mr. Schulz:**

I don't think so if I understand your question correctly. I would agree that we win or lose if the Borough didn't choose to apply the ordinance to Ms. Trask's roof. Would win or lose if the roof painting is not protected by the Constitution. Would lose . . . .

Let's take this back one step and maybe this — maybe this helps where I — where I see this. If it is a content neutral ordinance, where the Borough would just have to have, you know, a substantial interest as opposed to a compelling. That fails, and it fails because the interest here

would be aesthetics or safety when we're talking about signs. Safety can't realistically debate here. Aesthetics doesn't play because you have this dichotomy between the flag and the writings. Who makes that judgment? Well, here the Borough is. The Borough's saying that's the judgment we're making. We're not gonna pursue this and we have three examples in our universe to look at. And — and all three roof examples that I — in my universe, I don't know of any . . . but I hope I answered your question. Thank you.

**Chief Justice Fabe:**

Thank you and thanks to both counsel. We'll take this matter under advisement and stand in recess until 1:30.