Tom OELS,[1] Appellant,

v.

**ANCHORAGE POLICE DEPARTMENT EMPLOYEES ASSOCIATION, Municipality of Anchorage, Appellees.**

No. S–13949.

Supreme Court of Alaska.

Jan. 20, 2012.

Rehearing Denied March 2, 2012.

---

1. Although appellant Oels named ten "John Does" as parties, the superior court never was asked to approve "John Doe" party status and thus the "John Does" were never proper parties. They are omitted from this appeal.

Kevin T. Fitzgerald, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellant.

Gregory G. Silvey, Guess & Rudd, P.C., Kenneth D. Ford, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Anchorage Municipal Code (AMC) section 03.30.068(A)(4) permits municipal employees to retire and be rehired, thereby accessing accumulated retirement benefits and resuming employment under a different retirement program with the Municipality of Anchorage (MOA).

Tom Oels has been a sergeant with the Anchorage Police Department (APD) since 2002. In 2005, Oels stated his intent to retire and be rehired while retaining the rank of sergeant. Oels was told that under AMC 03.30.068(A)(4) he could retire, but could only be rehired as an entry-level patrol officer, not as a sergeant.

Oels filed a complaint with the Employee Relations Board (the Board) alleging (1) that MOA and the Anchorage Police Department Employees Association (APDEA) had violated AMC 03.30.068(A)(4) by requiring that sergeants be rehired as patrol officers, and (2) that APDEA had breached its duty of fair representation. The Board heard the matter and decided against Oels on both counts.

Oels appealed the ruling to the superior court which, sitting as an intermediate appellate court, affirmed the Board's decision. The superior court held that although the plain meaning of AMC 03.30.068(A)(4) was ambiguous, the legislative history underlying the ordinance demonstrated that the provision was intended to allow for flexibility to

rehire sergeants as patrol officers. The superior court recognized that the plain language of this provision does not require that sergeants be rehired at entry, patrol-level, positions. Several of the terms within the provision are defined elsewhere in the municipal code. The superior court also recognized this, and its order observed that under AMC 03.30.005, "rehire" is defined as returning to employment in the same class of positions or into a position in a parallel class from which the individual separated. The superior court reasoned that AMC 03.30.068(A)(4) alters the "normal" rehire process by requiring that a person who is reinstated within 31 days after termination must be "rehired at the entry level salary, accrual, and seniority." But "entry level" is not a defined term in the municipal code, and the parties disagreed about its meaning. MOA argued that "entry level" must be construed to mean entry level *within the police department,* e.g., a patrol officer position, and Oels argued that it must be construed to mean "entry level *sergeant.*" The superior court found both interpretations to be equally plausible, declared the ordinance ambiguous, and turned to the legislative history to decide its meaning.

We agree with the superior court's analysis that the municipal code defines "rehire" as returning to the same position or class of positions, but we ultimately reach a different result than the superior court because, as used in AMC 03.30.068(A)(4), "entry level" modifies "salary, leave accrual and seniority." The ordinance is not ambiguous; by its terms, it does not require sergeants to be rehired as entry-level patrol officers.

We therefore reverse the superior court's decision on appeal because the unambiguous meaning of AMC 03.30.068(A)(4) provides that APD sergeants approved for retire/rehire must be rehired either into the same

position or into a position in the same or parallel class.

## II. FACTS AND PROCEEDINGS

This case concerns the rehiring of APD employees shortly after retirement, and specifically requires that we determine whether, under AMC 03.30.068(A)(4), a police sergeant who takes advantage of a municipal retire/rehire program must be rehired in his former position as a sergeant or in a position of a same or parallel class, or must instead be rehired as an entry-level patrol officer. AMC 03.30.068(A)(4) provides in full:

> *Reinstatement to a position after terminating within a 31–day period.* An employee who terminates and requests to be rehired with less than a 31–day break in service and without a competitive recruitment must submit a written request through normal agency channels to the agency head. The request to rehire must be approved in advance by the agency head and the director. If the request to terminate and rehire is denied, the employee cannot grieve this action. Employees who terminate and rehire under this section shall be rehired at the entry level salary, leave accrual, and seniority. Preemployment requirements may be waived with the exception of the drug screen, when applicable.

### A. Development Of AMC 03.30.068(A)(4)'s Retire/Rehire Provision

"Retire/rehire" is a process by which employees may retire from a position, claim accrued retirement benefits, and return to work—in some cases accruing new benefits under a new retirement system.[2] Retire/rehire appears particularly appealing to APD employees because police officers can retire after 20 years of service[3] and officers may become eligible for retirement before reaching age 50.[4] Prior to 2003, certain non-

---

**2.** Certain APD employees, for instance, can "retire under the former Police and Fire Retirement System, return to work and then begin accruing benefits under the State of Alaska Public Employees Retirement System," instituted in 1993.

**3.** *See* AMC 03.85.065 (2011) ("A member may retire after completion of 20 years credited ser-

vice with the municipality regardless of age."). This provision has not changed since 2003.

**4.** Minutes, Anchorage Assembly Regular Meeting (July 15, 2003) (testimony of Gary Gilliam, Acting Captain for the Anchorage Police Department, that many employees seeking to retire and

APDEA [5] MOA employees had been permitted to retire and be rehired in place on an ad hoc basis. For instance, MOA permitted certain high-ranking, non-APDEA police officers to retire and be rehired in place in late 2002.

Anchorage Municipal Code section 03.30 sets forth personnel rules governing certification and selection of candidates for employment. Until July 2003, no AMC provision specifically addressed retire/rehire. In July 2003 Assembly member Dick Traini sponsored a bill, AO 2003–105, to codify the informal retire/rehire program. This ordinance as proposed would have amended AMC 03.30.068(A) to add subsection (4), which read:

> Reinstatement to *current* position after terminating within a 31–day period. An employee who terminates and requests to be rehired *into their current position* with less than a 31–day break in service and without a competitive recruitment must submit a written request through normal agency channels to the agency head. The request to rehire must be approved in advance by the agency head and the director. If the request to terminate and rehire is denied, the employee cannot grieve this action. Employees who terminate and rehire under this section shall be rehired at the entry level salary, leave accrual, and seniority. Preemployment requirements may be waived with the exception of the drug screen, when applicable.[6]

Assembly member Traini's supporting memorandum specifically stated that rehired employees would be "selected again to *remain in their current position.*"[7] In his memo-

randum, Assembly member Traini described the purpose of the proposed ordinance as follows:

> The purpose is to facilitate an employee's desire to retire under one retirement system and return to work under another retirement system.
>
> . . .
>
> This allows for the MOA to keep highly qualified employees instead of, in many cases, [these employees] leaving the MOA for employment elsewhere. Currently, if a person terminates, particularly in [the] Police and Fire System, and is competitively rehired, they must first go through a battery of required tests. This provision allows for a required drug screening, when applicable, as long as the separation from MOA employment is less than 31 days.[8]

At a July 15, 2003 Assembly meeting, APD Acting Captain Gary Gilliam testified in support of AO 2003–105, stating that the proposal would allow APD to retain many of its most qualified employees by allowing "more qualified detectives, supervisors, and commanders to retire from one [retirement] plan, and participate in another."[9]

Assembly member Allan Tesche moved to amend AO 2003–105 to delete the phrase "into their current position."[10] Assembly member Tesche stated that this amendment would make the ordinance more flexible by expanding the types of positions into which the officers could be rehired. Captain Gilliam disagreed with Assembly member Tesche's amendment, because Gilliam did not want APD "to lose a 20–year homicide detective" to patrol duty, adding, "I need those people in a position that they're trained for."[11] Police Chief Walt Monegan, howev-

---

be rehired "are not near a normal retirement age.").

5. APDEA is the exclusive bargaining representative for certain classes of APD officers, from patrol officers to detective sergeants. Higher ranks, such as lieutenants and captains, are not represented by APDEA.

6. Anchorage Ordinance No. 2003–105 (emphasis added). The emphasized portions are those that subsequently were altered by the Assembly through amendments, as discussed below.

7. Assembly Chair Dick Traini, Assembly Memorandum No. 555–2003 (June 24, 2003) (emphasis added).

8. *Id.*

9. Testimony of Gary Gilliam, APD Acting Captain, at 1:12, Anchorage Assembly Regular Meeting (July 15, 2003).

10. Statement of Allan Tesche, Assemblyman, at 1:13, Anchorage Assembly Regular Meeting (July 15, 2003).

11. Statement of Gary Gilliam, APD Acting Captain, at 1:15, Anchorage Assembly Regular Meeting (July 15, 2003).

er, supported the amendment because it would provide more flexibility without *prohibiting* rehiring the employees into their current positions.

Assembly member Tesche's substantive amendment passed despite opposition (including a "nay" vote by Assembly member Traini, the bill's original sponsor). A second, "technical" amendment then passed, which changed the title to reflect the newly-revised ordinance by replacing "reinstatement to *current* position" with "reinstatement to *a* position." (Emphasis added.) Amended ordinance 2003–105 then passed with all in favor, including sponsor Traini. Consequently, AMC 03.30.068(A)(4) as adopted omits all language dictating reinstatement to a "current position," and instead provides in relevant part:

> Reinstatement *to a position* after terminating within a 31–day period. An employee who terminates and requests to be rehired with less than a 31–day break in service and without a competitive recruitment must submit a written request through normal agency channels to the agency head.

(Emphasis added.)

### B. Oels's Complaint

Appellant Tom Oels is an APD shift supervisor and has held the rank of sergeant since 2002. Like all APD sergeants, Oels is represented by APDEA.[12]

On September 22, 2005, Oels emailed Chief Monegan and indicated his desire to retire and be rehired in place. His request was denied because APDEA blocked its members from rehiring in place. An APDEA retire/rehire information packet given to Oels stated that he would be rehired as a patrol officer.[13]

Oels submitted a grievance to APDEA because he would not be allowed to retire and be rehired in place, and Oels discussed his grievance with the APDEA Executive Board on several occasions. APDEA put the issue to a vote of its membership on December 8, 2005. The APDEA membership voted to deny its members the ability to rehire in place.[14] Shortly thereafter, in January 2006, the APDEA Executive Board denied Oels's request to pursue his grievance against MOA, and in February 2006 Chief Monegan officially denied Oels's request.[15]

On June 22, 2006, Oels filed suit in the superior court, alleging that MOA and APDEA violated AMC 03.30.068, and that APDEA breached its duty of fair representation to its sergeant members. On February 12, 2007, the superior court ordered that Oels file his complaint with the Employee Relations Board and stayed the case pending agency review.

On March 14, 2007, Oels filed his complaint with the Board. A probable cause investigator found sufficient cause for a hearing.[16]

### C. The Board Hearing

An evidentiary hearing was held before the Board on August 29–30, 2007.[17] All parties were represented by counsel.

---

**12.** *See supra* note 5.

**13.** The packet stated that rehired employees "[would] be rehired as a Patrol Officer," and that their "job assignment [would] be Patrol."

**14.** The ballot question read "Should the APDEA support the view that an individual parti[c]ipating in the retire/rehire process be allowed to be rehired in his/her former position?" The question was accompanied by an explanatory chart of proposed changes, as well as an explanation that, absent a change in policy, "a sergeant who wants to participate in the retire/rehire program is rehired as a police officer, not a sergeant." The membership voted 156–94 against the proposition that officers should be rehired in their current positions.

**15.** The Chief wrote to Oels, "I must advise you that though you are certainly eligible to retire and rehire, I will not approve your ability to rehire in your current position."

**16.** Oels's complaint before the Board was time-barred per AMC 03.70.140(C), but APDEA and MOA agreed to waive any untimeliness objection.

**17.** The hearing was recorded but transcripts were not produced due to "an equipment malfunction." As such, no reliable independent record exists of the testimony offered at the hearing, however all parties summarized hearing testimony in their post-hearing briefs and the witness lists and exhibits are available in the record.

More than a year later, on November 11, 2008, the Board hearing officer issued his Recommended Findings of Fact, Conclusions of Law, and Order. The hearing officer found that because language that provided that employees would be rehired "into their current position" had been deleted from the final version of AMC 03.30.068(A)(4) prior to its passage, the ordinance as passed did not mandate that Oels be rehired in place. The hearing officer also concluded that because retirement is a mandatory subject of bargaining, it would be an unfair labor practice for the Assembly to make unilateral changes to retire/rehire policy, and even if the ordinance had included language mandating rehiring in place, "the ordinance would not have applied to members of APDEA." Finally, the hearing officer found that APDEA had not breached its duty of fair representation to Oels because APDEA's actions were not arbitrary, discriminatory, or in bad faith, because "Oels was permitted to present his views," and because ultimately the APDEA membership voted on the issue.

The parties were given until November 24, 2008 to submit written objections to these findings; none did. On April 14, 2009, the Board issued its ruling and adopted the hearing officer's recommended findings in favor of MOA and APDEA, specifically that (1) neither MOA nor APDEA had violated AMC 03.70.140 (2011) [18] or any other AMC provision, and (2) APDEA had not breached its duty of fair representation.

### D. Appeal To The Superior Court

Oels appealed the Board's decision to the superior court sitting as an intermediate appellate court. On appeal, Oels argued (1) that the Board erred in finding that AMC

03.30.068(A)(4) permitted MOA to rehire sergeants as patrol officers, and cited to the legislative history of the ordinance in support; and (2) that the Board erred in finding that APDEA did not breach its duty of fair representation to its sergeant members.[19] APDEA and MOA argued in response (1) that the plain language of AMC 03.30.068(A)(4) controlled; (2) that if ambiguity did exist the legislative history supported the Board's decision; and (3) that APDEA did not breach its duty of fair representation.[20] Oral argument was held before Superior Court Judge Eric Aarseth on June 25, 2010.

On July 20, 2010, the superior court issued its decision on appeal affirming the Board's decision. The superior court held that the plain meaning of AMC 03.30.068(A)(4) was ambiguous, but that the legislative history supported APDEA's and MOA's interpretation. It also held that APDEA "did not breach its duty of fair representation to its sergeant members by declining to pursue Oels' grievance." The superior court did not address the Board's conclusion that, even if AMC 03.30.068(A)(4) had included language mandating rehire in place, "the ordinance would not have applied to members of APDEA" because retire/rehire was a mandatory subject of bargaining.

This appeal followed.

## III. DISCUSSION

### A. Standard Of Review

■ "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the [administrative] decision."[21]

---

**18.** AMC 03.70.140 sets forth municipal rules concerning unfair labor practices, including, *inter alia*, prohibited actions by MOA, employees, and employee representatives. This provision has not been changed since 1989.

**19.** Although it was not included in the issues presented for appellate review before the superior court, Oels devoted a portion of his brief on appeal to the superior court to arguing that the Board erred in finding that the collective bargaining agreement (CBA) controlled over contrary Municipal ordinance. Oels presented a similar argument before the Board.

**20.** APDEA and MOA also argued before the superior court that the CBA controlled over contrary municipal ordinance because retire/rehire was a mandatory subject of bargaining for the 2004 CBA, and that any unilateral change by MOA would constitute an unfair labor practice.

**21.** *Kingik v. State, Dep't. of Admin., Div. of Ret. & Benefits,* 239 P.3d 1243, 1247–48 (Alaska 2010) (quoting *McMullen v. Bell,* 128 P.3d 186, 189–90 (Alaska 2006)).

In reviewing the merits of an administrative ruling, we apply a four-part standard, using "(1) the 'substantial evidence test' for questions of fact, (2) the 'reasonable basis test' for questions of law involving agency expertise, (3) the 'substitution of judgment test' for questions of law involving no agency expertise, and (4) the 'reasonable and not arbitrary test' for review of administrative regulations."[22] The "substitution of judgment" test is equivalent to de novo review[23] and requires that we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[24]

"We review the interpretation of a statute de novo."[25] When construing statutes, we consider three factors: "the language of the statute, the legislative history, and the legislative purpose behind the statute."[26] We have held that "the plainer the language of the statute, the more convincing any contrary legislative history must be ... to overcome the statute's plain meaning."[27]

## B. Oels's Appeal Is Not Barred For Lack Of Standing.

APDEA and MOA argue for the first time on appeal that Oels lacks standing to assert his claims. Specifically, APDEA and MOA contend that Oels has not shown an actual or imminent injury because he did not actually request to retire/rehire and has not shown that his request would be approved even if he did so. In response Oels asserts without elaboration that he has "ample standing" under "the interest-injury approach."

APDEA and MOA concede that the question of standing was not raised before either the Board or the superior court. "Questions of standing should be raised and decided during the initial stages of litigation,"[28] and failure to raise the issue below results in waiver of that defense.[29] We note that, even if standing were properly before us, Oels's appeal would not be barred: Oels took concrete steps toward retire/rehire,[30] and "we have long interpreted Alaska's standing requirement leniently in order to facilitate access to the courts. The basic idea ... is that an identifiable trifle is enough for standing to fight out a question of principle.'"[31] Consequently, we consider Oels's appeal.

## C. It Was Error To Conclude That AMC 03.30.068(A)(4) Requires Retiring Sergeants To Be Rehired As Patrol Officers.

Oels argues that AMC 03.30.068(A)(4) requires that retiring sergeants be rehired as entry level sergeants, not as patrol officers. APDEA and MOA argue that the ordinance provides that MOA need not rehire Oels as a sergeant.

22. *ConocoPhillips Alaska, Inc. v. State, Dep't. of Natural Res.*, 109 P.3d 914, 919 (Alaska 2005) (citing *Jager v. State*, 537 P.2d 1100, 1107 n. 23 (Alaska 1975)).

23. *Griswold v. City of Homer*, 252 P.3d 1020, 1025 n. 6 (Alaska 2011).

24. *Kingik*, 239 P.3d at 1248 (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

25. *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009) (citing *Alaskans For Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

26. *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010) (citing *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1050 (Alaska 2004)).

27. *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 n. 6 (Alaska 1991) (citing *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982)).

28. *Osterkamp v. Stiles*, 235 P.3d 178, 185 n. 19 (Alaska 2010).

29. *Id.* at 185–86; *see also Moore v. State, Dep't of Natural Res.*, 992 P.2d 576, 577 n. 5 (Alaska 1999) (citing *Jackson v. Nangle*, 677 P.2d 242, 250 n. 10 (Alaska 1984)).

30. Oels emailed the chief of police to request retire/rehire in place, and his request was denied due to APDEA policy as set forth in the APDEA information packet. Oels then met with MOA and APDEA officials to complain, presented his case as a grievance to APDEA, and discussed his case with the APDEA Executive Board on several occasions, only to learn that his request to rehire in place had again been denied.

31. *State v. Planned Parenthood of Alaska*, 35 P.3d 30, 34 (Alaska 2001) (quoting *Wagstaff v. Superior Court, Family Court Div.*, 535 P.2d 1220, 1225 n. 7 (Alaska 1975)).

In construing AMC 03.30.068(A)(4), we consider "the language of the statute, the legislative history, and the legislative purpose behind the statute." [32]

1. **When read in concert with the definitions in AMC 03.30.005, the plain meaning of AMC 03.30.068(A)(4) requires that employees retiring under this provision shall be rehired either into the same position or into a position in the same or a parallel class.**

■ AMC 03.30.068(A)(4) provides in full: *Reinstatement to a position* after terminating within a 31–day period. An employee who terminates and requests to be rehired with less than a 31–day break in service and without a competitive recruitment must submit a written request through normal agency channels to the agency head. The request to rehire must be approved in advance by the agency head and the director. If the request to terminate and rehire is denied, the employee cannot grieve this action. *Employees who terminate and rehire under this section shall be rehired at the entry level salary, leave accrual, and seniority.* Preemployment requirements may be waived with the exception of the drug screen, when applicable.

(Emphases added.)

We read this section in concert with definitions elsewhere in the Code.[33] Anchorage Municipal Code 03.30.005 defines "rehire" as "an *appointment into a position in the same class of positions* from which separated in good standing, *or into a position in a parallel class.*" [34] "Reinstatement" is similarly defined: "*Reinstatement* means replacement of an employee into a position in the same class occupied previously or a parallel class when there has been no break in service...." [35]

Under AMC 03.30.068(A)(4) and the AMC definition of "rehire," MOA would have to rehire Oels into a position "in the same *class* of positions," or "into a position in a parallel *class.*" [36] The AMC defines "class" as "a group of positions sufficiently similar as to duties performed, scope of discretion and responsibility, minimum requirements of training, experience or skill, and such other characteristics that the same title, the same test of fitness and the same range of compensation apply to each position in the group." [37]

The Collective Bargaining Agreement (CBA) reflects that APD sergeants occupy a different "classification" than patrol officers. Although "title" is undefined in AMC 03.30.005, "sergeant" appears to be a position "title" and therefore is relevant to defining a "class." [38] It is unclear whether the same test of fitness [39] applies to sergeants and patrol officers, but the compensation for these positions certainly differs: sergeants are a "Grade 27 classification" whereas patrol officers are "Grade 24," and promotion to sergeant is accompanied by "at least a ten percent (10%) increase in base pay."

In light of these definitions, we conclude that patrol officers do not occupy the same "class" as sergeants, and therefore under AMC 03.30.068(A)(4) a retiring sergeant must be "rehired" in a position of the same or parallel class from which he retired.

We note that the ordinance provides for "reinstatement to a position" with the caveat

32. *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010) (citing *Western Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1050 (Alaska 2004)).

33. AMC 03.30.005 provides that the "words, terms and phrases" defined therein "shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning." These definitions were presented as exhibits at the Board hearing.

34. Emphasis added. The definition of "rehire" has not changed between the time of this case and the most recently updated Anchorage Municipal Code in 2011.

35. AMC 03.30.005.

36. *Id.* (emphasis added).

37. *Id.*

38. Although it does not make reference to the "class" set forth in the AMC, the CBA does provide that sergeants occupy a different "classification" than patrol officers.

39. The APD fitness test is described online. *See* Selection Process, http://www.muni.org/ Departments/police/JoinAPD/Pages/Selection Process.aspx (last visited Jan. 3, 2012).

that the employee "shall be rehired at the *entry level salary, leave accrual, and seniority*."[40] "Entry level," though undefined, is used here to modify "salary, leave accrual, and seniority," not to dictate rehire into an entry level *position*. In other words, upon rehire the employee is reset to entry level salary, leave accrual, and seniority within the same position (or a position within the same or a parallel class).

We therefore conclude that the plain language of AMC 03.30.068(A)(4) requires that employees retiring under this provision must be rehired into the same position or into a position among the same or a parallel "class" of positions, but at entry level salary, leave accrual, and seniority within that class or a parallel class of positions.

**2. The legislative history underlying AMC 03.30.068(A)(4) does not override the plain meaning of the ordinance.**

At the July 15, 2003, MOA Assembly meeting, Assembly member Traini proposed AO 2003–105—which would become AMC 03.30.068(A)(4)—and included language specifically mandating that rehired employees be reinstated "into their current position." Assembly member Tesche moved to delete this language. Assembly member Tesche stated that this "core amendment"[41] would make the ordinance more flexible by expanding the types of positions that retiring officers could be rehired into. Assembly member Tesche's amendment passed. A second, "technical amendment"[42] also passed, changing "reinstatement to *current* position" in the first sentence to "reinstatement to *a* position." (Emphasis added.) Amended ordinance AO 2003–105 was then approved.

Although these revisions can be read to suggest that the Assembly sought to remove the specific requirement that employees be rehired into the same position from which they retired, the assembly did not amend AMC 03.30.005, the definition of "rehire." Thus, the changes made to the ordinance prior to its passage still yielded a provision that unambiguously allows sergeants to retire and be rehired into the same or parallel class of positions. And the ability to rehire a police officer not only into the same position but also into a parallel class is consistent with Assembly member Tesche's concern to "make [the] ordinance more flexible by expanding the types of positions that [retiring] officers could be rehired into." We therefore conclude that although the legislative history is somewhat contrary to the plain meaning of the ordinance, it does not overcome the plain meaning.[43]

**3. The express purpose underlying AMC 03.30.068(A)(4) is consistent with the plain meaning of the ordinance.**

Oels argues on appeal that AMC 03.30.068(A)(4) arose from APD's desire to stem losses of experienced officers. Oels also contends that "the experience and training of highly qualified employees like sergeants is best served by having them return as sergeants, rather than as patrol officers." APDEA does not address the purpose of the ordinance, except to argue that we should not consider it.

In construing AMC 03.30.068(A)(4), the "legislative purpose behind the statute" is one of three factors we may consider.[44]

In his memorandum proposing AO 2003–105, Assembly member Traini described the purpose of the proposed ordinance as follows:

> The purpose is to facilitate an employee's desire to retire under one retirement sys-

---

40. AMC 03.30.068(A)(4) (emphasis added). As the superior court noted in its decision, the term "entry level" is not defined or used elsewhere in the AMC, nor is it defined in Black's Law Dictionary or in applicable case law.

41. Assembly member Tesche said, "I'm going to vote in favor of this—I do have a core amendment that I would like to offer."

42. The purpose of this "technical amendment" was to make the first sentence of the ordinance consistent with the change already provided by Assembly member Tesche's amendment.

43. *See Coughlin v. Gov't Emp. Ins. Co. (GEICO)*, 69 P.3d 986, 988 (Alaska 2003) (quoting *Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 831–32 (Alaska 2001)).

44. *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010).

tem and return to work under another retirement system.... This allows for the MOA to keep highly qualified employees instead of, in many cases, [these employees] leaving the MOA for employment elsewhere. Currently, if a person terminates, particularly in [the] Police and Fire System, and is competitively rehired, they must first go through a battery of required tests. This provision allows for a required drug screening, when applicable, as long as the separation from MOA employment is less than 31 days.

Assembly member Traini himself apparently intended that affected employees rehire into their current position,[45] although his stated purpose for the proposed ordinance was "to facilitate an employee's desire to retire under one retirement system and return to work under another retirement system"—in other words, to obtain retirement benefits under one plan, and return to work and accrue new retirement benefits under another plan. This purpose is equally well-served no matter the position to which the employee returns.[46] The express purpose of AMC 03.30.068(A)(4) therefore is served by allowing APD employees to retire and be rehired without regard to their specific positions upon rehiring, and this purpose is consistent with the plain meaning of the ordinance. Our interpretation of the ordinance is also consistent with Assembly member Tesche's stated purpose in offering his amendment to the proposed ordinance: to make the ordinance more flexible by expanding the types of positions into which officers could be rehired.

 4. **Summary: AMC 03.30.068(A)(4) requires that APD sergeants who are approved for retire/rehire must be rehired into the same position, or in a position of the same or parallel class.**

We conclude that the meaning of AMC 03.30.068(A)(4) is plain and not ambiguous, and that the AMC definitions of "rehire," "reinstatement," and "class" together require that employees retiring under AMC 03.30.068(A)(4) must be rehired either into the same position, or into a position in the same or a parallel class of positions. We also conclude that the legislative history, although evidencing some contrary intent, does not override this plain meaning, and that evidence of legislative purpose also supports this interpretation. We therefore interpret AMC 03.30.068(A)(4) to require that, if retire/rehire is approved in a particular case, a retiring APD sergeant must be rehired as a sergeant or in a position in the same or parallel class.

**D. We Do Not Decide Whether APDEA Breached Its Duty Of Fair Representation Or Whether The Ordinance Is Moot In Light Of The CBA.**

Oels argued that APDEA breached its duty of fair representation to its sergeant members before both the Board and the superior court. Both the Board and the superior court ruled on this issue. Oels did not raise this issue on appeal to us: it is absent from his points on appeal and is not raised elsewhere in his opening brief. APDEA and MOA contend that Oels has waived this issue on appeal. In his reply brief, Oels asserts that the issue has not been abandoned, arguing essentially that the superior court's attention to the issue preserved it.

 On appeal to this court, the "[f]ailure to argue a point of law constitutes abandonment."[47] This comports with our "well-established rule that issues not argued in opening appellate briefs are waived."[48]

**45.** Assembly member Traini's proposed ordinance AO 2003–105 contained such language, and his memorandum in support also noted employees being "selected again to remain in their current position."

**46.** Furthermore, Assembly member Traini went on to emphasize that the proposed ordinance "allows for the MOA to keep highly qualified employees instead of, in many cases, [these employees] leaving the MOA for employment elsewhere." The problem Assembly member Traini sought to avoid apparently was employees leav-

ing MOA, not their returning to different positions.

**47.** *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.,* 227 P.3d 457, 460 (Alaska 2010) (citing *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980)).

**48.** *Hymes v. DeRamus,* 222 P.3d 874, 887 (Alaska 2010) (citing *Shearer v. Mundt,* 36 P.3d 1196, 1199 (Alaska 2001)).

Moreover, an issue omitted from an appellant's points on appeal, even if that issue is cursorily presented in the opening brief, is deemed abandoned,[49] and "[a]ttention to the issue in a reply brief does not resuscitate it."[50]

Oels omitted the breach of duty of fair representation issue from his points on appeal and did not mention it in his opening brief. His attention to the issue in his reply brief does not resuscitate it. We determine that the issue is abandoned on appeal and decline to consider it here.

■ For similar reasons, we also decline to consider whether MOA's enactment of AMC 03.30.068(A)(4) constitutes an unfair labor practice or is moot in light of the CBA.[51]

## IV. CONCLUSION

We REVERSE the superior court's decision affirming the Board and conclude that the plain meaning of AMC 03.30.068(A)(4) requires that retiring APD sergeants approved for retire/rehire must be rehired into the same position or a position in the same or parallel class.

**49.** *Braun v. Alaska Commercial Fishing and Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991) (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980)).

**50.** *Id.* (citing *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 213 n. 4 (Alaska 1982)).

**51.** The Board found that "even if the final version of AMC 3.30.068(A)(4) passed by the Assembly had included language mandating that employees be 'rehired into their current position', the ordinance would not have applied to members of APDEA" because it would have constituted a unilateral change to the CBA between APDEA and MOA.

Both sides argued this issue before the Board. Although Oels did not formally identify this issue in his points on appeal to the superior court and the superior court did not rule on it, Oels, APDEA and MOA all addressed the issue in some form before the superior court as well.

We decline to consider this issue on appeal for two reasons. First, this issue was not raised by any party on appeal, and is therefore deemed abandoned. *Smallwood*, 227 P.3d at 460 (citing *O'Neill Investigations*, 609 P.2d at 528). Second, to construe the CBA so as to properly address this question would demand substantial factual inquiry, none of which has been developed in the record before us.