*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RODNEY S. PEDERSON, | ) |
| | ) Supreme Court No. S-17840 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-09-10971 CI |
| v. | ) |
| | ) O P I N I O N |
| ARCTIC SLOPE REGIONAL | ) |
| CORPORATION and MARY ELLEN | ) No. 7621 – September 23, 2022 |
| AHMAOGAK, | ) |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Rodney S. Pederson, pro se, Anchorage, Appellant. James E. Torgerson, Stoel Rives LLP, Anchorage, and C. Robert Boldt and Michael Shipley, Kirkland & Ellis LLP, Los Angeles, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

CARNEY, Justice.

## I. INTRODUCTION

A corporate shareholder alleged the corporation violated his statutory right to inspect certain records and documents. The superior court found that the shareholder did not assert a proper purpose in his request. The shareholder appeals, arguing the superior court erred by finding his inspection request stated an improper purpose,

sanctioning him for failing to appear for his deposition, and violating his rights to due process and equal protection by being biased against him. We reverse the superior court's order finding that the shareholder did not have a proper purpose when he requested the information at issue from the corporation. But we affirm the superior court's discovery sanctions.

## II. FACTS AND PROCEEDINGS

### A. Facts

This appeal arises out of a longstanding dispute[1] between Rodney Pederson and the Arctic Slope Regional Corporation (ASRC).[2] Pederson is an original shareholder of ASRC, possessing 100 Class A shares.[3] He was employed as in-house counsel to ASRC, and later as an executive for one of its subsidiaries, until the employment relationship soured.[4] Pederson has since sued ASRC and sought election to its board.[5]

In June 2009 Pederson sent a letter seeking to exercise his shareholder right

---

[1] For the relevant background see *Pederson v. Arctic Slope Regional Corp.* (*Pederson I*), 331 P.3d 384, 386-93 (Alaska 2014) and *Pederson v. Arctic Slope Regional Corp.* (*Pederson II*), 421 P.3d 58, 62-65 (Alaska 2018). *Pederson II* arises out of a factually related, yet legally distinct, action filed by ASRC against Pederson.

[2] ASRC is a regional Native corporation authorized by the Alaska Native Claims Settlement Act and, with certain constraints, established under Alaska law. *See* 43 U.S.C. § 1602(m) (defining Native corporations), § 1606 (authorizing formation of regional Native corporations under Alaska law); AS 10.06.960 (providing ANCSA-authorized Native corporations within meaning of § 1602(m) are subject to corporations code with specified overriding exceptions); *see also Ahmasuk v. State, Dep't of Com., Comty & Econ. Dev., Div. of Banking & Sec.*, 478 P.3d 665, 666, 666 nn.1-2 (Alaska 2021).

[3] *Pederson I*, 331 P.3d at 387.

[4] *Id.*

[5] *Id.*

to inspect ASRC's "books, records of account and minutes" under AS 10.06.430(b).[6] The letter enclosed three separate requests for information relating to (1) an alleged purchase of a minority interest in an ASRC subsidiary and potential transfers of that interest to executives, (2) the executive retirement plan, and (3) the process for setting executive compensation. In the letter Pederson explained that his goal was to use the information to create "an educational website recommending needed updates to the ASRC articles and/or bylaws." Pederson stressed that he wanted to "ensure any information included is true and accurate, and not false or misleading."

Pederson also accused some executives of putting their own interests before shareholders. He described his belief that officer and executive compensation should be reviewed by shareholders "in light of recent dramatic increases in officer and executive compensation packages, and in my opinion, the transfer of corporate assets to executives . . . . Someone has to step-up [sic] and do something to . . . place[] limits on management's ability to enrich themselves . . . at the expense of the Shareholders." Tying his concerns to the requested information, he wrote:

> Regarding the request for information on officer and executive compensation, what I am interested in is the influence that management Board members have in approving their own compensation, if any, and the Presidents' ability to determine or influence the compensation of fellow management Board members who elect them, if any. Again, I certainly do not want to mischaracterize the process or mislead the Shareholders about the . . . topics, nor do I want to make statements that are not true and accurate.

In addition to the generalized statement of purpose in his letter, Pederson

---

[6] AS 10.06.430(b) ("A corporation organized under this chapter shall make its books and records of account, or certified copies of them, reasonably available for inspection and copying . . . .").

included individualized statements of purpose for each request for information.[7]  First, Pederson sought information relating to the alleged transfer of ASRC subsidiary shares to its executives for the purpose of soliciting shareholder signatures to amend ASRC's procedures surrounding executive compensation.  Second, Pederson sought information relating to the executive retirement plan to solicit shareholder signatures to amend bylaws to prevent board members from also serving as compensated corporate officers.  Third, Pederson sought information relating to executive compensation for the past five fiscal years for the same purpose as his second request.

After a few rounds of informal negotiation, Pederson and ASRC could not agree on the scope of Pederson's inspection right and whether ASRC could demand a confidentiality agreement.  Unsatisfied with ASRC's partial disclosures, Pederson filed suit under AS 10.06.430(c), which provides a cause of action for an alleged violation of a shareholder's right to inspection.[8]

## B.    Proceedings

Pederson's complaint alleged that ASRC had denied his shareholder inspection rights by refusing to comply with his written demand stating a proper purpose.  He sought a money judgment for statutory and punitive damages along with an order compelling production of the materials he requested.  ASRC denied any wrongdoing

---

[7]    *See* AS 10.06.430(b) ("Shareholder inspection shall be upon written demand stating with reasonable particularity the purpose of the inspection.  The inspection . . . [must be] for a proper purpose.  Only books and records of account, minutes, and the record of shareholders directly connected to the stated purpose of the inspection may be inspected or copied.").

[8]    AS 10.06.430(c) ("An officer or agent who, or a corporation that, refuses to allow a shareholder, or the agent or attorney of the shareholder, to examine and make copies from its books and records of account, minutes, and record of shareholders, for a proper purpose, is liable to the shareholder . . . .").

under AS 10.06.430(b) and denied that Pederson had cited a proper purpose in his requests.

When both parties moved for summary judgment in February and March of 2010, however, ASRC stipulated that "[f]or purposes of summary judgment cross-motions, ASRC does not dispute that, in his correspondence, Pederson stated legally proper purposes for his requests." Thus, the issue on summary judgment, and later at trial, was whether ASRC's partial disclosures complied with its statutory obligation to disclose "books and records of account, minutes, and record of shareholders."[9] Following a bench trial the superior court found that ASRC had supplied Pederson with all of the information to which he was entitled under AS 10.06.430. Pederson appealed.

We reversed.[10] Relevant to this appeal, we held that a shareholder's right to inspect "books and records of account" includes, among other things, records of individual executive compensation and transfers of corporate assets or interests to executives.[11] We also noted that while ASRC had not disputed Pederson's proper purpose on appeal, regulations[12] governing the administration of Alaska Native corporations may "provide him with an additional proper purpose for inspection not

---

**9**      AS 10.06.430(c); *see also Pederson I*, 331 P.3d at 390.

**10**      *Pederson I*, 331 P.3d at 404.

**11**      *Id.* at 397 (concluding that shareholder's right of inspection included "monthly financial statements, records of receipts, disbursements and payments, accounting ledgers, and other financial accounting documents, including records of individual executive compensation and transfers of corporate assets or interests to executives").

**12**      *See* 3 Alaska Administrative Code (AAC) 08.345 (2014) (mandating disclosure of five most highly compensated corporate officers and all other officers and directors as a group in Native corporations' annual proxy solicitations).

available in the same way to shareholders of other corporations."[13] We remanded the matter to the superior court for further proceedings consistent with our decision.[14]

On remand Pederson argued that he was entitled to a judgment that ASRC had not complied with AS 10.06.430. The superior court denied his motion and allowed ASRC to provide additional documents as specified in *Pederson I*. Pederson filed several additional summary judgment motions again arguing that ASRC was liable to him as provided by AS 10.06.430(c) for its initial denial of his request for information. The superior court denied the motions, reasoning that *Pederson I* announced new law and therefore ASRC had not violated Pederson's inspection rights at the time it denied his request. Pederson petitioned for our review. We summarily reversed the superior court on the narrow ground that the *Pederson I* "decision reflect[ed] the existing and applicable law [at the time of his request]. The superior court [was] directed to reevaluate Pederson's summary judgment motion(s) with the correct legal framework in mind."[15]

On second remand, the superior court initially indicated that it was "looking very seriously at granting [Pederson's motion for] summary judgment, based on the Supreme Court." But the court ultimately permitted ASRC to argue for the first time that Pederson did not have a proper purpose for requesting the information. Pederson filed another motion for summary judgment contesting the superior court's order reopening the proper purpose issue. The superior court treated it as a motion for reconsideration and denied it. Later, the superior court issued an order that (1) ASRC had not waived

---

[13]     *Pederson I*, 331 P.3d at 398-99.

[14]     *Id.* at 404.

[15]     *Pederson v. Arctic Slope Reg'l Corp.*, No. S-16295 (Alaska Supreme Court Order, July 20, 2016).

its proper purpose defense; (2) the shareholder has the burden of proving a proper purpose; and (3) the proper purpose defense is not an affirmative one. The court then ordered discovery on the issue of proper purpose. In January 2019 the court sanctioned Pederson for failing to appear for his deposition.

At his rescheduled deposition the next month, Pederson made several statements that ASRC claimed demonstrated that he had an ulterior, unstated, and improper purpose. Pederson said that his stated purpose was not "the only purpose" and that he also wanted to know if there was "compensation [to the executives] that wasn't reported to the shareholders." When asked why he did not state that purpose, he responded, "I wouldn't say that I hid it. I think it was pretty obvious." He went on to say that he wanted "true and accurate information on the compensation records."

The superior court held an evidentiary hearing following the deposition. Pederson provided an affidavit in which he reiterated that his true purpose was to compare executive compensation disclosures with "true and accurate records" of executive compensation. On cross-examination he explained that he thought this purpose was "implicit in the demand."

In July 2020 the superior court issued findings of fact regarding proper purpose. The superior court stated it understood Pederson's purpose to be the one he had most recently advocated at the evidentiary hearing: "[t]o obtain true and accurate information and records." The court concluded that "[t]o merely state that [Pederson] wants accurate information is not sufficient." The court also rejected Pederson's contention that the purpose of auditing executive compensation was obvious from the face of his request. The superior court concluded that "[h]ad Pederson expressly stated that he suspected shenanigans, the Court would likely have found that he identified a proper purpose." The court then issued a final judgment in favor of ASRC.

Pederson appeals, arguing the superior court erred in interpreting and

applying the shareholder inspection statute.[16]

## III. STANDARD OF REVIEW

Statutory interpretation is a question of law, which we review de novo.[17] "When construing statutes, we consider three factors: 'the language of the statute, the legislative history, and the legislative purpose behind the statute.' "[18]

## IV. DISCUSSION

Alaska Statute 10.06.430(b) requires a corporation to "make its books and records of account . . . reasonably available for inspection . . . upon written demand [by a shareholder] stating with reasonable particularity the purpose of the inspection." Alaska Statute 10.06.430(c) provides a cause of action for shareholders seeking to enforce their inspection right.[19] Alaska Statute 10.06.430(c) also lists defenses to an enforcement action, including that the shareholder "was not acting in good faith or for a proper purpose in making" the inspection request. Pederson appeals the superior court's finding that his inspection request did not state a proper purpose.

### A. It Was Error To Find That Pederson's Purpose Was Improper.

Pederson argues the superior court incorrectly applied AS 10.06.430 in a

---

[16] Pederson also argues ASRC should have been equitably estopped from advancing an improper purpose defense so late in the litigation. Because we reverse the superior court's final judgment, we do not address those aspects of his brief.

[17] *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012).

[18] *Id.* (quoting *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010)).

[19] AS 10.06.430(c) ("An officer or agent who, or a corporation that, refuses to allow a shareholder, or the agent or attorney of the shareholder, to examine and make copies from its books and records of account, minutes, and record of shareholders, for a proper purpose, is liable to the shareholder . . . .").

manner that required him to carry the burden of proving "a proper purpose pursuant to a new [and] more stringent standard." But whether a shareholder has stated a proper inspection purpose is primarily a question of law, and burdens and standards of proof do not apply to questions of law.[20] Although some factual disputes may arise in the course of determining the propriety of a shareholder's stated purpose, here ASRC concedes that "the purpose Pederson stated in his demands appeared to be facially proper." We agree.

Typically, a court should be able to determine from the face of the inspection request whether a stated purpose is a legally proper basis for inspection. Pederson's letter included three separate inspection requests. Each request contained a paragraph beginning with "Purpose of the Inspection." The superior court appears to have concluded that Pederson's purpose is limited to the paragraphs that are specifically labeled as statements of purpose. This was error. The stated purpose must be gleaned from the totality of the written request, including the cover letter. For example, if Pederson had said in his cover letter he wished to engage in corporate espionage but had listed a legally proper purpose in his statements of purpose, a court could certainly rely on the cover letter to find an improper purpose. The converse is also true.

The superior court found that "Pederson failed to provide [the necessary] specificity. Had Pederson expressly stated that he suspected shenanigans [by ASRC executives], the Court would likely have found that he had identified a proper purpose." But it is clear from the face of Pederson's request that he did suspect "shenanigans" by ASRC executives. Pederson sought information relating to the "Supplemental Executive Retirement Plan," the "process for officer and executive compensation," and the

---

[20] *See, e.g.*, *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 114 (2011) (Breyer, J., concurring) (emphasizing that "the evidentiary standard of proof applies to questions of fact and not to questions of law."); *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring) (standards of proof apply to "factual conclusions").

conveyance of ASRC interests to "Officers or Executives of ASRC." Pederson asserted that "there are clearly [some board members] who view Board membership as the path to the 'pot o' gold' and life changing wealth" and that "Shareholder benefits seem to be of secondary importance." He explained that these issues must be addressed "in light of recent dramatic increases in officer and executive compensation packages, and in my opinion, the transfer of corporate assets to executives . . . . Someone has to step-up [sic] and do something to . . . place[] limits on management's ability to enrich themselves . . . at the expense of the Shareholders." The totality of Pederson's request makes clear that he was seeking information on executive compensation because he suspected ASRC executives were enriching themselves at the expense of shareholders.

Auditing executive compensation is a proper purpose for a shareholder to pursue. The legislative history of the shareholder inspection statute explains that a request seeking "proof of mismanagement or other wrongdoing" sits at the apex of the shareholder's inspection right.[21] Indeed, in *Pederson I*, we explained that records of individual executive compensation are "crucial to the shareholders' ability to monitor the performance of their corporate agents and protect their interests as shareholders."[22]

Pederson's stated request clearly explained that he was seeking to audit executive compensation because he suspected ASRC executives of misappropriating shareholder funds. It was entirely proper for him to seek inspection of related documents.

**B. ASRC Did Not Have Good Cause To Suspect Pederson's Motives When It Denied His Request.**

Contrary to ASRC's arguments to us, nothing about Pederson's 2019

---

[21] Official Comment to AS 10.06.430 at 87.

[22] *Pederson I*, 331 P.3d 384, 397 (Alaska 2014).

deposition suggests that he disclaimed his originally asserted purpose in favor of a newly asserted, improper purpose. ASRC points to Pederson's deposition testimony that his originally stated purpose "wasn't the only purpose" and that he also wanted to know "if there was . . . compensation that was made [to the executives] that wasn't reported to the shareholders that should have been reported." When asked why he originally did not state that purpose, he responded: "I wouldn't say that I hid it. I think it was pretty obvious." He further stated that he wanted "true and accurate information on the compensation records." The superior court incorrectly focused on Pederson's last statement to conclude that his only purpose was obtaining true and accurate information and that his 2009 records inspection request thus was not made for a proper purpose.

But, as we explained above, Pederson *did* assert a proper purpose in his 2009 records inspection request, and nothing about his deposition or trial testimony suggests otherwise. In short, Pederson stated a proper purpose for his 2009 records inspection request; ASRC did not then, and does not now — 13 years later — have good cause to deny the records request;[23] and it was error to enter judgment for ASRC. We therefore reverse the judgment and remand to the superior court for entry of judgment in Pederson's favor, declaring that ASRC wrongfully rejected Pederson's 2009 records inspection request and entering appropriate relief.

C.     **The Superior Court Did Not Err By Sanctioning Pederson.**

Pederson appears to challenge the superior court's order sanctioning him for failing to comply with discovery. Other than complaining he was "ordered to submit to a 'short deposition' on a single question [and] could no longer continue after three hours . . . ," Pederson does not develop his argument.

---

[23]     *See id.* at 400 (stating that corporation must have "good cause to doubt a shareholder's proper purpose" before it "may refuse to honor the shareholder's inspection request").

The superior court sanctioned Pederson for failing to timely respond to discovery requests and failing to appear at his scheduled deposition. It found that "Pederson willfully failed to attend his own deposition after being served with proper notice and that he further failed to inform opposing counsel . . . that he planned to not attend." Pederson does not dispute these findings. We affirm the superior court's discovery sanctions.

### D. Pederson Presents No Evidence That The Superior Court Was Biased Or Violated His Rights To Due Process And Equal Protection.

Pederson argues that the various superior court judges who presided over his case have been motivated by racial bias against him as an Alaska Native litigant. The only evidence of bias he cites is the length of time this litigation has continued and his belief that the superior court failed to abide by court procedure in order to favor ASRC. He concedes, however, that "with [the evidence] available to him" he cannot "meet the applicable standard" for judicial bias.[24]

His concession is well taken. "Pederson cannot rely solely on the court's adverse rulings as evidence of bias; he must point to specific words or actions showing the court was partial."[25] Because "[h]e has not made these [specific] showings," and the record gives no indication of bias, we reject Pederson's allegations.[26]

## V. CONCLUSION

We AFFIRM the superior court's order sanctioning Pederson for failing to comply with discovery. We REVERSE the superior court's final judgment in favor of

---

[24] He also admits that his evidence "certainly is not likely anywhere near the Court's standard for bias."

[25] *Pederson II*, 421 P.3d 58, 73 (Alaska 2018).

[26] *Id.*

-12- 7621

ASRC, VACATE its findings of fact and conclusions of law, and REMAND for further proceedings consistent with this opinion.