NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOE G., | ) |
| | ) Supreme Court No.: S-18449 |
| Appellant, | ) |
| | ) Superior Court No.: 3PA-21-00220 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S | ) No. 1943 – February 1, 2023 |
| SERVICES, | ) |
| | ) |
| Appellee. | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: David Case, 49th State Law, LLC, Soldotna, for Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Rachel Levitt, Assistant Public Advocate, Palmer, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.    INTRODUCTION

This appeal arises out of a grandfather's attempt to intervene in a child in need of aid (CINA) case. In *State of Alaska, Department of Health & Social Services,*

---

\*    Entered under Alaska Appellate Rule 214.

*Office of Children's Services v. Zander B.*, we held that the superior court may allow persons to intervene in a CINA case so long as they meet Alaska Civil Rule 24's criteria for intervention and it is in the best interests of the child.[1] We then affirmed intervention by the child's foster parents, who sought to challenge the Office of Children's Services' (OCS) decision to remove the child from their care.[2] Cautioning that "[f]oster parent intervention should . . . be the rare exception rather than the rule" because it could "distract[] from OCS's mandate of working toward family reunification,"[3] we concluded that intervention was permissible in that case because the foster parents had specific evidence about the proposed placement that the court would not hear from the existing parties.[4]

Citing *Zander B.*, the grandfather of a child in OCS custody moved to intervene in the child's CINA case. The child's parents' rights had previously been terminated, and OCS placed the child in a residential treatment facility due to her condition. Her grandfather sought to challenge this placement and to discover her medical records to better understand her needs. The superior court denied permissive intervention. It reasoned that the grandfather was not likely to present evidence that the court would not otherwise hear. Because the court focused too narrowly on that single factor and did not address the relevant considerations for permissive intervention under Civil Rule 24, we reverse and remand.

---

[1]     474 P.3d 1153, 1162-63, 1172 (Alaska 2020).

[2]     *Id.* at 1165.

[3]     *Id.* at 1163-65.

[4]     *Id.* at 1165.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Jasmine[5] is a teenager in OCS custody.  She is an Indian child for purposes of the Indian Child Welfare Act (ICWA).[6]  Several years ago the parental rights of Jasmine's birth mother were terminated, and she was adopted by her paternal grandparents.[7]  Her adoptive mother died in 2020.  Her adoptive father voluntarily relinquished his parental rights, returning Jasmine to OCS custody.

Jasmine exhibited troubling behaviors related to mental illness: aggression, suicidal ideation, running away, and risky activities.  In 2022, OCS sought court approval to have Jasmine placed in a secure psychiatric residential treatment facility.[8]

### B.  Proceedings

In May 2022 Joe, Jasmine's maternal grandfather,[9] filed a motion to intervene in the CINA proceedings to review Jasmine's placement.  Joe's motion to

---

[5]     Pseudonyms have been used to protect the parties' privacy.

[6]     *See* 25 U.S.C. § 1903(4).

[7]     The record does not indicate whether the parental rights of Jasmine's birth father, who was not involved in her life, were terminated in a CINA proceeding or through the adoption proceeding.

[8]     A court may not approve a child's placement in a secure residential psychiatric treatment facility unless OCS shows:  (1) the child is gravely disabled or suffering from mental illness; (2) there is no less restrictive alternative reasonably available; and (3) treatment is likely to improve the child's condition or prevent the child's deterioration.  AS 47.10.087(a).  A court must review the child's placement every 90 days to ensure it is still warranted.  AS 47.10.087(b).

[9]     Joe and Jasmine's precise legal relationship is uncertain because of the effect of her prior adoption.  *Compare* AS 25.23.130(a)(1) (stating that adoptions "terminate" all former family relationships), *with* 25 U.S.C. § 1903(2) (" '[E]xtended family member' shall be as defined by the law or custom of the Indian child's tribe . . . ."), *and* AS 47.10.990(1)(C) (adopting 25 U.S.C. § 1903(2) for CINA cases

intervene presented two arguments. First, he argued that intervention was necessary to access information about Jasmine's needs and treatment, which would allow him to argue for visitation and eventually placement. Second, he argued intervention would allow him to protect Jasmine's interests. In support of these arguments Joe cited Civil Rule 24 and *Zander B.* Joe contended that his case presented a stronger argument for intervention than *Zander B.* because — compared to the foster parents in that case — his interests as the child's grandfather were more clearly aligned with the goals of the CINA proceeding and with Jasmine's interests.

OCS opposed the motion to intervene. First, OCS argued that intervention was unnecessary because Joe, as a grandfather, already had the right under the CINA statutes to challenge OCS's placement and visitation decisions and to seek related discovery.[10] Second, OCS argued that, unlike the foster parents in *Zander B.*, Joe had no unique information to bring to the court's attention. Because Jasmine had been appointed counsel, OCS maintained, she was able to bring relevant information about her placement to the court's attention. Joe's intervention was therefore unnecessary.

The superior court denied Joe's motion to intervene. The court stated that intervention in CINA cases is governed by Civil Rule 24. The court then discussed *Zander B.*, noting that the decisive factor supporting intervention was the foster parents' ability to present important evidence that no other party would present. Reasoning that

___

involving Indian children). In the superior court the parties treated Joe as Jasmine's legal grandfather. On appeal OCS concedes that it waived any argument about Joe's relationship with Jasmine. *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012) (holding standing may be waived under Alaska law). We therefore assume for purposes of this appeal that Joe is Jasmine's grandfather.

**10** *See* CINA Rule 19.1(e) (permitting grandparents to challenge denial of placement); AS 47.14.100(m) (same); AS 47.10.080(p) (permitting grandparents to challenge visitation decisions).

"there is no evidence that [Joe] has any special information not available to the other parties," the court concluded that this was not the type of "rare case" in which intervention was appropriate.

## III.   DISCUSSION

On appeal Joe argues that the order denying intervention rests on an incorrectly narrow reading of *Zander B*. We largely agree.

In *Zander B*. we held that intervention into CINA cases is permissible and governed by Civil Rule 24.[11]  Intervention is appropriate if the trial court determines that (1) the intervenor's claim has a common question of law or fact with the CINA proceeding; (2) intervention will not unduly delay the adjudication or prejudice the rights of the original parties; and (3) intervention is in the best interests of the child.[12] The superior court did not apply these standards to the circumstances of this case. Instead it focused solely on the one factor that was dispositive under the very different circumstances of *Zander B*. This legal error requires reversal.[13]

---

[11]   *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Zander B.*, 474 P.3d 1153, 1163-64 (Alaska 2020).

[12]   *Id.* at 1171 ("When the cautious use of Civil Rule 24(b) permissive intervention is necessary to promote the child's best interest, the trial court has the discretion to employ it."); *see also* Alaska R. Civ. P. 24(b) (requiring intervenor to have common question of law or fact and for intervention to not unduly delay or prejudice original adjudication).

[13]   A trial court's ruling on a motion for permissive intervention is normally reviewed for abuse of discretion. *State, Dep'ts of Transp. & Lab. v. Enserch Alaska Constr.*, 787 P.2d 624, 629 (Alaska 1989) ("The grant or denial of a motion for permissive intervention is . . . review[ed] for abuse of discretion."). But the superior court's failure to fully apply the standard for permissive intervention was legal error that we review de novo. *Cf. Timothy W. v. Julia M.*, 403 P.3d 1095, 1100 (Alaska 2017) ("We review evidentiary rulings for abuse of discretion, although whether the trial court applied the correct legal standard presents a question of law that we review de novo." (quoting *State v. Carpenter*, 171 P.3d 41, 63 (Alaska 2007))).

*Zander B.* involved the legally vexing issue of a foster parent intervention. OCS had initially placed a young boy with special needs in a non-relative foster home.[14] Almost a year later OCS decided to transfer the child's placement to his paternal grandmother in Texas.[15] The child's foster parents, who expressed the desire to eventually adopt the child, moved to intervene to challenge the transfer of placement.[16] They proposed to present testimony from the child's care providers that the child's interactions with the grandmother resulted in "severe setbacks emotionally and behaviorally."[17] None of the existing parties to the case, including the guardian ad litem, opposed the transfer.[18] The trial court granted the foster parents' request for permissive intervention.[19]

We affirmed, holding the trial court did not abuse its discretion in applying Civil Rule 24's criteria for permissive intervention.[20] The foster parents' wish to adopt the child meant their claim shared a common question of law or fact with the CINA proceeding.[21] The question of prejudice gave us more pause. Allowing foster parents to intervene so they can challenge OCS's decisions risks hindering family reunification, which is "[a]mong the primary purposes of the CINA statutes."[22] Foster parent

---

[14]   474 P.3d at 1157-58.

[15]   *Id.*

[16]   *Id.*

[17]   *Id.* at 1158-61, 1165-66.

[18]   *Id.* at 1158.

[19]   *Id.*

[20]   *Id.* at 1165.

[21]   *Id.* at 1158 ("[B]ecause the foster parents were identified as a 'pre-adoptive foster placement' and attested to their desire to adopt Douglas, their claim did share a 'question of law or fact' with the placement review:  the child's best interests.").

[22]   *Id.* at 1163.

intervention "will in most cases be more prejudicial than helpful to the process."[23] What made *Zander B.* unique was the foster parents' ability to present crucial evidence that the judge would not otherwise hear.[24] The benefit of this evidence outweighed our concerns about prejudice and delay.[25]

In this case the superior court's analysis of Joe's motion to intervene was unduly narrow. Although the order mentions Rule 24, there is no discussion of (1) the common "question of law or fact" or (2) whether "intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[26] Instead the superior court considered only one factor: Joe's ability to present otherwise unavailable evidence.[27] This factor was dispositive in *Zander B.*, but the facts of this case present substantially different considerations to weigh.

For one thing Joe is not a foster parent. And Jasmine has no parents seeking reunification with her. The main concern we highlighted in *Zander B.* — that allowing foster parents to intervene would undermine the fundamental goal of reunifying child with parent — is not at issue.

---

[23] *Id.* at 1165.

[24] *Id.*

[25] *Id.* at 1165-71. *But see id.* at 1178 (Winfree, J., dissenting) (asserting that allowing foster parents to intervene as parties to request placement hearings and challenge OCS's actions "will prejudice parents' rights in, unduly delay, and unnecessarily expand CINA litigation").

[26] Alaska R. Civ. P. 24(b).

[27] Contrary to OCS's arguments on appeal, the superior court's order did not implicitly consider the other factors of Rule 24. The sole paragraph of analysis is exclusively concerned with the grandfather's ability to present otherwise unavailable evidence: "Here, however, there is no evidence that [Joe] has any special information not available to the other parties. Therefore, the court does not find that this case is the type of rare case where intervention would be appropriate and accordingly denies the motion."

Another difference is that Joe has avenues under the CINA statutes and rules to achieve at least some of his stated goals.[28] The foster parents in *Zander B.* had no such options. Intervening was the only way they could challenge the transfer of placement.[29]

These examples are illustrative, not exhaustive. There may be other relevant considerations. The superior court's sole focus on Joe's ability to present unique evidence was a failure to properly apply the test for permissive intervention described in Civil Rule 24 and *Zander B.* We therefore vacate the order denying intervention and remand for the court to correctly apply the test.[30]

Joe argues that we should follow the lead of other jurisdictions that have adopted distinct tests for intervention by grandparents or intervention after parental rights have been terminated.[31] We see no need to do so. Those specific circumstances

---

[28]     *See* AS 47.10.070(a) (grandparents must receive notice of CINA hearings and are "entitled to be heard" at these hearings); CINA Rule 3(c) ("A grandparent of a child and the out-of-home care provider are entitled to be heard at any hearing at which the person is present."); AS 47.14.100(m) (permitting grandparents to challenge denial of placement); AS 47.10.080(p) (permitting grandparents to challenge visitation decisions). OCS conceded in the superior court that Joe's ability to challenge placement and visitation decisions also entitles him to "receive discovery relevant to those issues."

[29]     *See Zander B.*, 474 P.3d at 1177 (Winfree, J., dissenting).

[30]     If the superior court does grant intervention, we strongly encourage it to limit the intervention to a specific proceeding. *See Zander B.*, 474 P.3d at 1164 n.29 (majority opinion) ("We caution courts to limit foster parent intervention to specific upcoming proceedings.").

[31]     Specifically, Joe argues that we should adopt Arizona's test that strongly encourages grandparent intervention in child welfare cases when the child is parentless and Connecticut's multi-factor test for permissive intervention. *See Bechtel v. Rose ex rel. Maricopa Cnty.*, 722 P.2d 236, 241 (Ariz. 1986) (analyzing permissive intervention by grandparents and concluding that "the best interest of a parentless child is usually served by allowing his grandparents to intervene in a dependency hearing"); *In re Baby Girl B.*, 618 A.2d 1 (Conn. 1992) (employing generalized five-factor test for permissive

are relevant to the questions of prejudice and delay and also to the child's best interests. A court can give them appropriate weight when applying our existing standard for permissive intervention in CINA cases.

## IV. CONCLUSION

We VACATE the order denying intervention and REMAND for further proceedings consistent with this opinion.

---

intervention into CINA-equivalent cases and distinguishing between intervention pre- and post-parental rights termination).